No. 25-10491

---

# In the United States Court of Appeals for the Fifth Circuit

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
*Plaintiff-Appellee,*

SARAH BUDD,
*Intervenor-Plaintiff-Appellee,*

*v.*

SKYWEST AIRLINES, INC.,
*Defendant-Appellant.*

**Appeal from the United States District Court for the Northern District of Texas
Honorable Sidney A. Fitzwater, United States District Judge
Case No. 3:22-CV-1807-D**

---

## OPENING BRIEF

---

GORDON REES SCULLY
MANSUKHANI LLP
Chad A. Shultz
55 Ivan Allen Jr. Blvd. NW, Ste. 750
Atlanta, Georgia 30308
(404) 869-9054

GORDON REES SCULLY
MANSUKHANI LLP
John Roger Mann
555 17th Street, Ste. 3400
Denver, Colorado 80202
(303) 534-5160

FISHER & PHILLIPS LLP
Liz E. Drumm
500 Crescent Court, Ste. 300
Dallas, Texas 75201
(214) 220-8313

*Attorneys for Defendant-Appellant SkyWest Airlines, Inc.*

---

## ORAL ARGUMENT REQUESTED

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to 5TH CIR. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

(1)     Case No. 25-10491, *EEOC v. SkyWest Airlines, Inc.*

(2)     SkyWest Airlines, Inc. SkyWest has no parent company and no publicly held corporation owns more than 10% of its stock.

(3)     Counsel for SkyWest Airlines, Inc.: John Roger Mann, Gordon Rees Scully Mansukhani LLP, 555 17th Street, Suite 3400, Denver, CO 80202; Chad A. Shultz, Gordon Rees Scully Mansukhani LLP, 55 Ivan Allen Jr. Boulevard, NW, Suite 750, Atlanta, GA 30308; Liz E. Drumm, Fisher & Phillips LLP, 500 Crescent Court, Suite 300, Dallas, TX 75201.

(4)     EEOC and its counsel: Alexa Rae Lang, Brooke Elisa Lopez, 207 S. Houston Street, Third Floor, Dallas, TX 75202; Ann Henry, 230 South Dearborn, Suite 2920, Chicago, IL 60604.

(5)     Sarah Budd and her counsel: Edith K. Thomas, Zipin Amster & Greenberg PLLC, 8757 Georgia Avenue, Silver Spring, MD 20910.

*s/John Roger Mann*
John Roger Mann
GORDON REES SCULLY MANSUKHANI LLP
555 17th Street, Suite 3400
Denver, Colorado 80202
(303) 534-5160
jmann@grsm.com

*Attorney of Record for Defendant-Appellant*

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to 5TH CIR. R. 28.2.3, Defendant-Appellant believes oral argument would be helpful in this case because it will assist the Court in understanding the issues on appeal, particularly the issue of mitigation of compensatory damages under Title VII, which appears to be an issue of first impression in this Circuit.

TABLE OF CONTENTS

Certificate of Interested Parties ..............................................................................i

Statement Regarding Oral Argument.......................................................................ii

Table of Contents....................................................................................................iii

Table of Authorities................................................................................................vi

Jurisdictional Statement............................................................................................1

Issues Presented........................................................................................................1

Statement of the Case................................................................................................2

      I.      Nature of case...............................................................................2

      II.     Course of proceedings and disposition below......................................2

      III.    Statement of facts relevant to issues on appeal......................................4

Summary of Argument..............................................................................................8

Argument...................................................................................................................9

I.     SkyWest is entitled to a new trial because the district court abused its discretion in admitting Budd's hearsay text messages...................................9

      A.     Standard of review.......................................................................9

      B.     Budd's hearsay texts were offered to prove the alleged incidents of harassment actually occurred and therefore improperly admitted for the truth of the matters asserted therein............................................10

II.    SkyWest is entitled to a new trial on damages because the district court erred in refusing to instruct the jury on mitigation of damages for noneconomic loss.....................................................................................................17

      A.     Standard of review.....................................................................17

      B.     SkyWest's tendered instruction on mitigation of damages was supported by evidence and correctly stated the applicable law.....18

C.      Congress did not abrogate the common-law doctrine of avoidable consequences for compensatory damages in Title VII cases.........21

D.      *EEOC v. SDI*: Plaintiffs in Title VII cases have a duty to mitigate nonpecuniary compensatory damages................................................23

E.      The duty to mitigate nonpecuniary harm is recognized at common law and has long been recognized in Texas.....................................32

F.      Because it was error not to instruct the jury that Budd had a duty to mitigate her compensatory damages, SkyWest is entitled to a new trial on compensatory damages......................................................38

III.    The evidence is insufficient to support punitive damages..............................40

A.      Standard of review.......................................................................40

B.      Title VII punitive damage standards.................................................41

C.      The evidence failed to establish that the conduct of SkyWest's managerial employees was malicious or recklessly indifferent......43

        1.      Punitive damages cannot be based on retaliation because the jury found none..............................................................43

        2.      The evidence failed to establish the conduct of SkyWest's managerial employees was malicious or recklessly indifferent.............................................................................44

                a.      Dallin Hansen........................................................45

                b.      Dustin Widmer.......................................................46

                c.      Kellie Dehais.........................................................49

D.      The evidence established that SkyWest made good-faith efforts to comply with Title VII...................................................................53

Conclusion...............................................................................................55

Certificate of Service.............................................................................57

Certificate of Compliance Pursuant to F.R.A.P. 32(g)...............................58

Addendum

Judgment (Doc.150)

Amended Judgment (Doc.183)

Memorandum Opinion and Order (Doc.184)

# TABLE OF AUTHORITIES

## CASES

*50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*,
180 F.3d 247 (5th Cir.1999) ..................................................................41

*In re Air Crash Disaster*,
982 F.Supp. 1101 (D.S.C.1997) ...........................................................29

*Asante-Chioke v. Dowdle*,
2024 WL 2863379 (E.D.La.2024).........................................................29

*Astoria Fed. Sav. & Loan Assn. v. Solimino*,
501 U.S. 104 (1991).............................................................................24

*Baker v. Dorfman*,
1999 WL 191531 (S.D.N.Y.1999) .......................................................29

*Bank One, Texas, N.A. v. Taylor*,
970 F.2d 16 (5th Cir.1992) ...................................................................19

*Bartley v. Chom Kim*,
2012 WL 13102304 (M.D.Fla.2012)......................................................29

*Bollore S.A. v. Import Warehouse, Inc.*,
448 F.3d 317 (5th Cir.2006) .................................................................10

*Chuy v. Philadelphia Eagles Football Club*,
431 F.Supp. 254 (E.D.Pa.1977), *aff'd*, 595 F.2d 1265 (3d Cir.1979)............29

*Cooper Ind, Inc. v. Leatherman Tool Group, Inc.*,
532 U.S. 424 (2001)..............................................................................40

*David H. v. Spring Branch Indep. Sch. Dist.*,
569 F.Supp. 1324 (S.D.Tex.1983).................................................... 36-37

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*,
188 F.3d 278 (5th Cir.1999) .................................................................53

*Eagan v. LaPlace Towing, Inc.*,
    43 F.3d 670 (5th Cir.1994) .......................................................................14

*EEOC v. Boh Bros. Constr. Co., LLC*,
    731 F.3d 444 (5th Cir.2013) ................................................................43, 53

*EEOC v. Fair Oaks Dairy Farms, LLC*,
    2012 U.S. Dist. LEXIS 154570 (N.D.Ind. Oct. 29, 2012) ...........................31

*EEOC v. Fred Meyer Stores, Inc.*,
    954 F.Supp.2d 1104 (D.Or.2013) ............................ 27, 28, 29, 30, 31, 33, 34

*EEOC v. Global Horizons, Inc.*,
    2014 U.S. Dist. LEXIS 26342 (D.Haw. Feb. 28, 2014).................................31

*EEOC v. SDI of Mineola, Tex., LLC*,
    631 F.Supp.3d 418 (E.D.Tex.2022) .......................... 18, 23-30, 31, 32, 33, 39

*Gallup v. Omaha Prop. & Cas. Ins. Co.*,
    282 Fed.Appx. 317 (5th Cir.2008) ..............................................................25

*GE Capital Commercial, Inc. v. Worthington Natl. Bank*,
    754 F.3d 297 (5th Cir.2014) .......................................................................17

*Gideon v. Johns-Manville Sales Corp.*,
    761 F.2d 1129 (5th Cir.1985) .....................................................................38

*Gomez v. American Empress L.P.*,
    189 F.3d 473 (9th Cir.1999) ..................................................................29, 34

*Hardin v. Caterpillar, Inc.*,
    227 F.3d 268 (5th Cir.2000) .......................................................................42

*Harms v. Lab. Corp. of Am.*,
    155 F.Supp.2d 891 (N.D.Ill.2001).............................................................29

*Harris v. FedEx Corp. Servs., Inc.*,
    92 F.4th 286 (5th Cir.), *cert. denied*, 145 S.Ct. 168 (2024) ..............41, 53, 55

*Hygeia Dairy Co. v. Gonzalez*,
    994 S.W.2d 220 (Tex.App.1999) ................................................................40

*Jackson v. Taylor*,
 912 F.2d 795 (5th Cir.1990) ...............................................................18

*Janvey v. Dillon Gage, Inc.*,
 856 F.3d 377 (5th Cir.2017) ...............................................................17

*Johnston & Johnston v. Conseco Life Ins. Co.*,
 732 F.3d 555 (5th Cir.2013) ...............................................................18

*Jordan v. Maxfield & Oberton Holdings, LLC*,
 977 F.3d 412 (5th Cir.2020) .................................................................9

*Kanida v. Gulf Coast Med. Personnel LP*,
 363 F.3d 568 (5th Cir.2004) ...............................................................18

*Kaur v. City of Lodi*,
 2016 WL 627308 (E.D.Cal.2016) ........................................................29

*Kolstad v. American Dental Assn.*,
 527 U.S. 526 (1999)...............................................................41, 42, 43, 46

*Koon v. U.S.*,
 518 U.S. 81 (1996)..............................................................................17

*Langiano v. City of Fort Worth*,
 131 F.4th 285 (5th Cir.2025) ...............................................................10

*Martinez v. Valdez*,
 125 F.Supp.3d 1190 (D.Colo.2015) ......................................................33

*Moulton v. Alamo Ambulance Serv., Inc.*,
 414 S.W.2d 444 (Tex.1967) ...............................................34, 37, 39, 40

*Nabors Well Servs., Ltd. v. Romero*,
 456 S.W.3d 553 (Tex.2015) .................................................................39

*Neal v. Director*,
 1995 WL 517249 (D.D.C.1995)...........................................................29

*Norvell v. BNSF Ry. Co.*,
 2022 WL 1127714 (W.D.Wash.2022), *aff'd,* 2023 WL 3299988
 (9th Cir.2023) ....................................................................................33

*Pacific Mut. Life Ins. Co. v. Haslip*,
 499 U.S. 1 (1991)...............................................................................40

*Palla v. LM Sports, Inc.*,
 2019 WL 6464621 (E.D.Cal.2019) ...................................................29

*Pasquantino v. U.S.*,
 544 U.S. 349 (2005)......................................................................32, 33

*Petroci v. Transworld*,
 2012 WL 5464597 (W.D.N.Y.2012)..................................................29

*Pierce v. Ramsey Winch Co.*,
 753 F.2d 416 (5th Cir.1985) .............................................................18

*Rhines v. Salinas Constr. Techs., Ltd.*,
 574 Fed.Appx. 362 (5th Cir.2014) ...................................................53

*Rogan v. Lewis*,
 975 F.Supp. 956 (S.D.Tex.1997)......................................................35

*Salas v. U.S.*,
 974 F.Supp. 202 (W.D.N.Y.1997).....................................................29

*Smith v. Isuzu Motors Ltd.*,
 137 F.3d 859 (5th Cir.1998) ...............................................................9

*St. Louis S.W. Ry. Co. v. Ball*,
 66 S.W. 879 (Tex.Civ.App.1902)......................................................35

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
 538 U.S. 408 (2003)......................................................................40, 53

*Texas Animal Health Commn. v. Garza*,
 27 S.W.3d 54 (Tex.App.2000) ..........................................................34

*Thompson v. Quarles*,
297 S.W.2d 321 (Tex.Civ.App.1956)................................................................39

*U.S. v. Parry*,
649 F.2d 292 (5th Cir.1981) ............................................................................16

*U.S. v. Regents of N.M. State Univ.*,
2018 U.S. Dist. LEXIS 169861 (D.N.M. Oct. 1, 2018) ................................31

*U.S. v. Texas*,
507 U.S. 529 (1993)....................................................................................31, 33

*Umphress v. Hall*,
479 F.Supp.3d 344 (N.D.Tex.2020) ...............................................................23

*United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*,
995 F.Supp.2d 647 (S.D.Tex.2014).........................................................35, 36

*Vance v. Union Planters Corp.*,
209 F.3d 438 (5th Cir.2000) ..............................................................................9

*Video Intl. Prod., Inc. v. Warner-Amex Cable Communs., Inc.*,
858 F.2d 1075 (5th Cir.1988) ..........................................................................40

*Wantou v. Wal-Mart Stores Texas, LLC*,
23 F.4th 422 (5th Cir.2022), *cert. denied*, 143 S.Ct. 745 (2023) ............41, 53

*Warner v. Talos ERT, LLC*,
133 F.4th 412 (5th Cir.2025) .............................................................................9

*Westport Ins. Corp. v. Pennsylvania Natl. Mut. Cas. Ins. Co.*,
117 F.4th 653 (5th Cir.2024) ...........................................................................18

*White v. BNSF Ry. Co.*,
726 Fed.Appx. 603 (9th Cir.2018) ..................................................................33

*Willitt v. Purvis*,
276 F.2d 129 (5th Cir.1960) ............................................................................17

*Zimmerman Truck Lines, Inc. v. Pastran*,
587 S.W.3d 847 (Tex.App.2019) .....................................................................35

**COURT RULES**

FED.R.CIV.P. 50 ...................................................................................................1

FED.R.CIV.P. 59 .................................................................................................1, 9

FED.R.EVID. 403..................................................................................................14

FED.R.EVID. 801(c)..............................................................................................10

FED.R.EVID. 802...............................................................................................10, 14

FED.R.EVID. 803(1)..............................................................................................11

FED.R.EVID. 803(3)..............................................................................................11

**STATUTES**

28 U.S.C. § 451....................................................................................................1

28 U.S.C. § 1291..................................................................................................1

28 U.S.C. § 1331..................................................................................................1

28 U.S.C. § 1337..................................................................................................1

28 U.S.C. § 1343..................................................................................................1

28 U.S.C. § 1345..................................................................................................1

42 U.S.C. § 1981a...............................................................................................23

42 U.S.C. § 1981a(a)(1)...................................................................................24, 27

42 U.S.C. § 1981a(a)(2).......................................................................................27

42 U.S.C. § 1981a(a)(3).......................................................................................27

42 U.S.C. § 1981a(b)(1).......................................................................................41

42 U.S.C. § 1981a(b)(2).......................................................................................21

42 U.S.C. § 1981a(b)(3)..........................................................................22, 24, 27, 31

42 U.S.C. § 1981a(b)(3)(D) ...................................................................................3

42 U.S.C. § 1981a(d)(1) .......................................................................................24

42 U.S.C. § 2000e-5(g) ........................................................................................21

42 U.S.C. § 2000e-5(g)(1) .........................................................................22, 26, 27

**OTHER AUTHORITIES**

5th CIR. PATTERN CIV. JURY INSTR. 11.14 (2024) ...................................................20

5th CIR. PATTERN CIV. JURY INSTR. 15.5 (2024)..........................................19, 20, 35

C. McCormick, LAW OF DAMAGES § 33 (1935) ...............................................25, 36

E. Kantorovich, *The Mitigation of Emotional Distress Damages*,
    68 U.CHI.L.REV. 491 (2001) ...........................................................................36

7 EMP. COORD. EMPLOYMENT PRACTICES § 74:3 (2025)..........................................31

2 EMP. DISCRIM. COORD. ANALYSIS OF FEDERAL LAW § 64:7 (2025) .....................31

1 GUIDE TO EMPLOYMENT LAW & REGULATION § 2:64 (2025) ...............................31

L. Noah, *Comfortably Numb: Medicalizing (and Mitigating) Pain-and-
    Suffering Damages*, 42 U.MICH.J.L.REFORM 431 (2009) .............................37

N. Farahany, *The Costs of Changing Our Minds*,
    69 EMORY L.J. 75 (2019)................................................................................37

RESTATEMENT (SECOND) OF TORTS § 918 (1979)...................................................33

## JURISDICTIONAL STATEMENT

Jurisdiction in the district court was premised on 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. (ROA.29, ¶1). The judgment appealed from was entered November 20, 2024. (ROA.1599-1600). Defendant's FED.R.CIV.P. 50 and 59 motion was filed December 18, 2024 (ROA.2108) and denied March 4, 2025. (ROA.2765). An amended judgment was entered March 4, 2025. (ROA.2788). Defendant's notice of appeal was filed April 3, 2025. (ROA.2821). This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

Is SkyWest entitled to a new trial because the district court abused its discretion in admitting plaintiff's hearsay text messages?

Is SkyWest entitled to a new trial on damages because the district court erred in refusing to instruct the jury on mitigation of damages for noneconomic loss?

Is the award of punitive damages supported by sufficient evidence of malice or reckless indifference on the part of a SkyWest employee acting in a managerial capacity?

**STATEMENT OF THE CASE**

## I.     Nature of case.

Plaintiff EEOC brought this Title VII action against Defendant SkyWest Airlines for sex discrimination based on complaints by Intervenor-Plaintiff Sarah Budd that employees at SkyWest's Dallas maintenance facility engaged in conduct that EEOC allegedly subjected Budd to sex-based harassment that unreasonably interfered with her work environment. (ROA.30-34). SkyWest denied these allegations and maintained it made good faith efforts to prevent discrimination in the workplace. (ROA.44-46). Despite hearing evidence of SkyWest's good faith efforts, the jury retuned a verdict for Plaintiffs on the hostile work environment claim and awarded compensatory and punitive damages. SkyWest appeals the judgment for EEOC and Budd entered on the verdict and the district court's order denying its posttrial motions for JMOL and new trial.

## II.     Course of proceedings and disposition below.

EEOC's complaint asserted claims against SkyWest under Title VII for sex-based discrimination and hostile work environment and further alleged SkyWest subjected Budd to retaliation leading to constructive discharge. (ROA.31-34). Budd was allowed to intervene as plaintiff as of right (ROA.55-69) and to assert Title VII claims against SkyWest for sex-based discrimination alleging she was subjected to

retaliation for engaging in protected activity and constructively discharged. (ROA. 72-75). Before trial, the district court granted partial summary judgment for SkyWest on the retaliation claim to the extent it was based on constructive discharge, finding Plaintiffs were not entitled to recover backpay for lost wages after Budd took early retirement. (ROA.911-914).

Jury trial was held November 12 to 20, 2024. At the close of Plaintiffs' case, SkyWest moved for JMOL on punitive damages based on lack of evidence, and based on its good-faith efforts to comply with Title VII because it took prompt remedial measures and worked with Budd to put her on paid leave. (ROA. 3374:52:12-18). SkyWest renewed its JMOL motion after the close of evidence on the ground the evidence did not support punitive damages. (ROA.3622:23-3623:10). The motion was denied with leave to renew after the verdict. (ROA. 3624:16-18, 3633:1-2). SkyWest also objected to the jury charge on punitive damages on the ground there was no evidence to warrant the instruction. (ROA. 3622:204:23-25).

The jury found for SkyWest on the retaliation claim but returned a verdict for Plaintiffs on the hostile work environment claim and awarded $170,000 in past and future compensatory damages and $2 million in punitive damages (ROA.151), which the district court reduced to $130,000 under 42 U.S.C. § 1981a(b)(3)(D).

After the verdict SkyWest renewed its JMOL motion on punitive damages, but the court denied it without prejudice to be renewed after entry of judgment. (ROA.3844:9:20-3845:1).

Judgment was entered against SkyWest for $170,000 in compensatory damages and $130,000 in punitive damages. (ROA.1599-1600). SkyWest moved for JMOL on the punitive damage award and for a new trial on damages. (ROA.2108). The district court denied SkyWest's motions (ROA.2765-2787) and awarded Plaintiffs $220,132 in attorney fees and $24,607.47 in costs. (ROA.2788-2820). The court entered an amended judgment against SkyWest for $300,000 in damages, plus post-judgment interest. (ROA.2761-2764).

On EEOC's motion (ROA.2360-2370), the district court further entered an order enjoining SkyWest for three years from subjecting Parts and Maintenance Department employees to a hostile work environment based on sex, and ordering SkyWest to create and distribute a detailed protocol for responding to discrimination and harassment, and to conduct annual employee training on workplace harassment. (ROA.2763-2764).

## III.    Statement of facts relevant to issues on appeal.

SkyWest is a regional air carrier headquartered in St. George, Utah. (ROA. 3531:13-14). SkyWest has a broad and detailed anti-discrimination policy (SP53)

that prohibits certain defined conduct as harassment and requires employees to report such harassment to their immediate supervisor or manager, another manager, or Employee Relations. (ROA.3971-3974). SP53 requires managers to report complaints of harassment to Employee Relations "immediately." It also provides:

> All complaints of harassment, discrimination, and/or retaliation will be investigated promptly and impartially by Employee Relations in partnership with appropriate department leaders. To ensure an impartial and objective investigation, Employee Relations, in consultation with the SkyWest legal department, will direct strategy and communication efforts during this process. (ROA.3973).

After the investigation is completed, "A good faith and timely resolution of each complaint will be reached and communicated to the participants, as necessary." (*Id*.).

Sarah Budd began working for SkyWest in 2007 as a full-time employee within the Maintenance Department at SkyWest's Utah headquarters. (ROA.12, ¶3). Budd transitioned to part-time, working approximately 20 hours a week. In August 2019, she moved to Dallas-Fort Worth to work as a full-time parts clerk in SkyWest's Parts & Maintenance Department at Dallas Fort-Worth Airport.

Budd alleged that soon after she began working at DFW, she experienced harassment in the form of crude sexual comments and jokes from the mechanics she worked with and their supervisor, Dallin Hansen, whom Budd alleged repeatedly made sexually suggestive remarks to her and joked about "selling her" on the street. (ROA.2879-2883, 2886-2890, 2954-2959). Budd reached out to her direct

-5-

supervisor, Dustin Widmer, in early September to complain her co-workers were saying things that made her uncomfortable. During a meeting with Widmer, Budd indicated she felt uncomfortable because her co-workers were making sexual comments, although she did not repeat any specific comment. (ROA.3015-3018, 3032-3033). Widmer listened to her concerns and told her to let him know "if this doesn't settle down or escalates." (ROA.3171-3172). Budd subsequently took an unpaid medical leave of absence from October 24 until December 3, 2019. (ROA.80, ¶17).

On Wednesday, December 11, 2019, Budd sent an email to Widmer, General Manager of Parts Nikki Mitchell, and Vice-President of Maintenance Bill Dykes, requesting a part-time schedule for various reasons including "the salacious environment (which has already been expressed)." (Ex.16). (ROA.2964-2966). Mitchell forwarded Budd's email to Kellie Dehais, Employee Relations Manager in SkyWest's Human Resources department. (ROA.3548-3550).

The following Saturday, December 14, Budd sent Widmer an email reporting specific instances of alleged inappropriate conduct and harassment at SkyWest DFW, including reference to a December 11 incident involving a holiday candy jar. (Ex.17) (ROA.2966-2974). Budd alleged that a decorated candy jar was placed on top of a copier in a prominent position in her department. The jar was a stuffed animal that, in place of a body, held a candy jar filled with peppermints. The stuffed

animal held a sign, and someone placed a typed note saying "Carlos raped me" on the jar. For several hours, she alleged, department members would mime assaulting the jar and make rape-related jokes and comments. (ROA.2960-2963). On Monday, December 16, Widmer forwarded Budd's email to Dehais and texted Dehais to make her aware of it. (ROA.3170).

That same day, Budd filed a formal complaint alleging sexual harassment with SkyWest's Human Resources department through its online portal. (ROA.80, ¶20; ROA.2975-2983). Dehais contacted Budd the next day and initiated an investigation into her allegations. (ROA.3262-3268). Budd gave Dehais names of employees she alleged harassed her and told Dehais about the candy dish incident. (ROA.2983-2984, 3115-3117). SkyWest then placed Budd on paid administrative leave effective December 11 while Dehais conducted an investigation into her complaint. (ROA.80, ¶21; ROA.2996, 3117, 3576).

During her investigation, Dehais corroborated the events and individuals involved in the "candy jar incident" and as a result took disciplinary action against three employees at SkyWest DFW. (ROA.3273-3274, 3276-3277, 3598). Dehais, however, was unable to corroborate the other allegations of harassment in Budd's December 14 email and formal complaint and could not identify anyone who addressed harassing comments specifically to Budd. (ROA.3268-3272, 3277-3278).

Instead of terminating the entire department, Dehais recommended in-person training on SP53 at SkyWest DFW, which was delayed due to the COVID pandemic. (ROA.3275-3278). After concluding her investigation, Dehais reported to Budd on May 21, 2020 that:

> The investigation was conducted and corrective action and appropriate follow up has occurred with the individuals involved. Before having you return to work we scheduled some additional training for the entire shop but due to the health crisis it has been put on hold. As soon as it is safe and feasible the training will be re-scheduled. Once the training is complete we will reach out to you to have you return to work. (Ex.3 at DEF000757).

By this time, however, Budd had retained counsel who was communicating with SkyWest's counsel exclusively on her behalf. (ROA.3378-3380, 3585-3587).

Budd remained on paid administrative leave from December 11, 2019, to May 31, 2020, when she voluntarily accepted SkyWest's early retirement option. (ROA.2999-3000, 3119, 3129-3130). This was the basis of the district court's finding of no constructive discharge.

## SUMMARY OF ARGUMENT

SkyWest is entitled to a new trial because the district court abused its discretion in admitting Budd's text messages, which were offered for the truth of the matters asserted therein to prove the alleged incidents of harassment actually occurred, which prejudiced SkyWest by allowing Budd to corroborate her testimony with hearsay. SkyWest is also entitled to a new trial on compensatory damages because

the district court erred in refusing to give SkyWest's tendered jury instruction on mitigation of damages for noneconomic loss, which was supported by the evidence and correctly stated the applicable law.

The judgment for punitive damages entered on the jury's verdict should be reversed with directions to enter JMOL for SkyWest. The evidence failed to establish the conduct of SkyWest's managerial employees rose to the level of malice or reckless indifference necessary to support an award of punitive damages, and further established SkyWest made good-faith efforts to comply with Title VII.

**ARGUMENT**

**I.    SkyWest is entitled to a new trial because the district court abused its discretion in admitting Budd's hearsay text messages.**

**A.    Standard of review.**

Denial of a motion for new trial under FED.R.CIV.P. 59 is reviewed for abuse of discretion. *Warner v. Talos ERT, LLC*, 133 F.4th 412, 427 (5th Cir.2025). The court may grant a new trial when there is an erroneous evidentiary ruling at trial. *Jordan v. Maxfield & Oberton Holdings, LLC*, 977 F.3d 412, 417 (5th Cir.2020). Evidentiary rulings, including the determination whether a hearsay exception applies, are also reviewed for abuse of discretion. *Vance v. Union Planters Corp.*, 209 F.3d 438, 441 (5th Cir.2000); *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 862-63 (5th Cir.1998). "A district court abuses its discretion if it bases its decision on an

erroneous view of the law or on a clearly erroneous assessment of the evidence."

*Langiano v. City of Fort Worth*, 131 F.4th 285, 290 (5th Cir.2025). A district court

also abuses its discretion when its decision is unreasonable or arbitrary. *Bollore S.A.*

*v. Import Warehouse, Inc.*, 448 F.3d 317, 321 (5th Cir.2006).

> **B.    Budd's hearsay texts were offered to prove the alleged incidents of harassment actually occurred and therefore improperly admitted for the truth of the matters asserted therein.**

The judgment should be reversed and remanded for a new trial on all issues

because hearsay evidence consisting of Budd's text messages to her husband and

friends was improperly admitted at trial. (ROA.2309-2338). Budd's hearsay text

messages were used at trial to prove the truth of the matters asserted therein despite

the pretext that they were not offered for that purpose. These hearsay exhibits were

highly prejudicial to SkyWest because they allowed Budd to substantiate her account

of events that no other witness corroborated. Their improper admission warrants a

new trial for SkyWest on all issues.

Over SkyWest's objections, the district court admitted four exhibits consisting

of text messages between Budd and her husband, and between Budd and three others

who did not testify at trial, notwithstanding that these texts are unsworn, out-of-court

statements that are classic hearsay under FED.R.EVID. 801(c) and hence inadmissible

under FED.R.EVID. 802. (ROA.2892:23-2894:7, 2897:23-2898:5, 2987:11-21, 2993:

5-14). The court nevertheless admitted them as not being offered for their truth. (ROA.2891:3-4, 2893:22-2894:4).

Admission of these texts was highly prejudicial to SkyWest because they are the only evidence other than Budd's own testimony that certain events supporting her claim of hostile work environment actually occurred. In particular, Budd's text that "they're going to 'sell me' for prostitution" (ROA.2319) was offered to support her claim that Dallin Hansen once recommended to other employees that they prostitute her on their next work trip. But the only testimony about this alleged incident came from Budd herself. (ROA.2880:17-2881:18, 2846:17-22 3078:16-3079:10). No one else testified this incident happened, and there was no corroboration of her account by any other witness. Other than the candy dish incident, not one SkyWest employee corroborated anything else Budd said. The only testimony supporting the occurrence of these events is Budd's own.

For each exhibit, EEOC's counsel represented that the texts were not being offered for the truth of the matters asserted therein but were instead offered as evidence of Budd's "present sense impression" or "mental state," ostensibly under FED.R.EVID. 803(1) or 803(3). (ROA.2893:23-25, 2898:2-3, 2987:17-19, 2993:9-10). After giving limiting instructions that "it doesn't matter for purposes of this exhibit whether what is being said is true but instead what the witness is complaining

about to her husband," (ROA.2894:8-13), and that exhibits are "not offered for the truth of the matters asserted in the text but the making of them," (ROA.2898:6-8, 2897:22-24, 2993:15-17), the district court allowed these exhibits into evidence based on counsel's explicit representation the texts were not being offered for their truth, which turned out to be untrue.

Notwithstanding prior representations that the texts were not offered for their truth, during closing argument EEOC's counsel told the jury:

> So when you see this question (indicating) as you deliberate asking you did the employees of SkyWest sexually harass Ms. Budd because of her sex, there is no doubt that the answer is yes. The conduct Ms. -- Ms. Budd endured was frequent and severe. ***This wasn't a lie. Ms. Budd was texting her friends and family about this environment in realtime.*** You will see the time stamps on those texts. You will get a copy of those texts when you deliberate, and I encourage you to read all of them closely. [Emphasis added] (ROA.3712:1-9).

That the texts were in fact offered for the truth of the matters asserted therein was made clear by counsel's request to the jury during closing argument to "read all of them closely" because "This wasn't a lie. Ms. Budd was texting her friends and family about this environment in real time." The argument that "This wasn't a lie" explicitly and unmistakably asked the jury to consider the text messages for their truth content, not for Budd's "mental state" or "present sense impression." Budd's counsel also asked the jury "to review some of the text messages that Ms. Budd sent to her friends and family" and "please to review those in detail." (ROA.3706:9-13).

-12-

Although SkyWest requested another limiting instruction, the district court refused, holding the prior limiting instructions were sufficient. (ROA.2776:2-24).

This direction to the jury went beyond admission of the texts for the limited purpose of showing "state of mind" or "present sense impression," and instead acknowledged the texts were offered to prove the truth of the matters asserted therein "about this environment," and thus to prove the events Budd claimed occurred actually did. EEOC denied that telling the jury "this wasn't a lie" and that asking the jury to look at the time stamps of Budd's texts was asking the jury to consider the truth of Budd's August 30, 2019 text that someone at SkyWest said "apparently they are going to sell me for prostitution." But this is exactly what it was. EEOC even admitted below that the purpose of this hearsay was to counter SkyWest's "argument that the harassment did not occur" (ROA.2566), which further confirms the texts were offered for the truth of the matters asserted to bolster Budd's stories that no one else at trial substantiated. Counsel's assertion "this wasn't a lie" directly implicated the truth of the matters asserted in the texts and told the jury to consider them for that exact purpose, to counter SkyWest's questioning of Budd's credibility. These texts are not relevant to Budd's "present sense impression" (which is not at issue); their effect is to corroborate Budd's version of events.

After SkyWest pointed out that this argument, which blatantly told the jury to

-13-

consider the texts for their truth, was inconsistent with the reason EEOC offered for admitting these exhibits, the district court refused to give another limiting instruction. (ROA.3776:2-24). But by then it was too late. The bell could not be unrung. The entire 27-page stack of text messages—which were already selectively edited for relevance to Budd's claim—went to the jury. There was no effort to evaluate each text separately, even though only a few texts were the subject of Budd's testimony. (ROA.2895:5-2896:19, 2898:22-2899:19).

The district court abused its discretion in admitting Exhibits 21, 23, 24, and 25 based on an erroneous assessment of the evidence, because these texts were in fact offered for the truth of the matters asserted therein, as EEOC's closing argument made clear, and were therefore inadmissible hearsay under Rule 802. These hearsay texts were highly prejudicial to SkyWest, since they unfairly bolstered Budd's testimony on the conduct she alleged occurred during her employment. In essence, Budd's husband and friends testified without any ability or opportunity for the defense to cross-examine them on anything in the messages. The limiting instructions given to the jury were not enough to cure this prejudice. *See Eagan v. LaPlace Towing, Inc.*, 43 F.3d 670 (5th Cir.1994) (improper admission of testimony about settlement offer notwithstanding FED.R.EVID. 403 "tainted the jury, and [] a curative instruction likely would not have removed the taint.").

-14-

Although EEOC argued below there was "other evidence far more significant than the text messages supporting the jury's verdict in favor of Plaintiffs" (ROA. 2563), the evidence it cited consists solely of Budd's own testimony, plus testimony from her husband and expert, who had no firsthand knowledge of the incidents Budd describes. The texts go not to Budd's "subjective offense and emotional distress," but directly to whether the alleged harassment even occurred, *i.e.*, for the truth of the matters asserted.

The district court nevertheless denied SkyWest's new trial motion based on improper admission of the hearsay texts, concluding that their admission was proper because they were not being offered for their *literal* truth:

> EEOC's closing argument confirms its non-truth purpose. EEOC urged the jury to consider Budd's text messages as circumstantial evidence that she had experienced sexual harassment at SkyWest, not for the truth of the matters asserted. For example, Budd's text message to her husband stating that "[the shipment] is out near Dallas[,] apparently where [the coworkers with whom I will be traveling are] going to 'sell me' for prostitution," D. App. (ECF No. 166-1) at 178, *was offered as circumstantial evidence that Budd's coworkers had made such comments*, not as evidence that those coworkers actually intended to sell Budd for prostitution at the location of the shipment. This is plainly a permissible non-hearsay purpose. [Emphasis added]. (ROA.2779-2780).

That the texts were "offered as circumstantial evidence that Budd's coworkers had made such comments" establishes that they were in fact offered for the truth of the matters asserted—namely that Budd's coworkers *actually made* such comments,

-15-

which was a contested fact supported only by Budd's own testimony. For the texts to be "circumstantial evidence that Budd's coworkers had made such comments" necessarily means they were offered for their truth, that these events actually occurred. Obviously, EEOC did not offer the texts for their *literal* truth, *i.e.*, "as evidence that those coworkers actually intended to sell Budd for prostitution," but to establish that this incident actually happened, and thus the truth of the matters asserted in the text, *i.e.*, that Budd's coworkers made inappropriate comments to her. The texts were not offered for any "present sense impression"—unless the "present sense impression" was that these incidents actually occurred.

The lone case cited by the district court, *U.S. v. Parry*, 649 F.2d 292, 295 (5th Cir.1981), held an out-of-court statement was admissible in a criminal case "as circumstantial evidence of the declarant's knowledge of the existence of some fact." But the issue here was not Budd's *knowledge*, which was not relevant to her sexual harassment claims (unlike a criminal defendant's knowledge, which may be either an element of or a defense to a criminal charge), but whether the alleged incident in fact occurred, so that the hearsay texts were necessarily offered to show the incident alleged actually happened.

Because the hearsay texts corroborated Budd's testimony on events no one else substantiated, their admission prejudiced SkyWest. The abuse of discretion in

-16-

admitting this hearsay adversely influenced the jury's verdict, as established by its original award of $2 million in punitive damages, which was nearly 12 times the amount of, and thus grossly disproportionate to, its award of compensatory damages. Because hearsay Exhibits 21, 23, 24, and 25 were improperly admitted, and because they were highly prejudicial to SkyWest, denial of SkyWest's new trial motion was an abuse of discretion and the judgment should accordingly be reversed and the case remanded for a new trial on all issues. *See Willitt v. Purvis*, 276 F.2d 129, 132 (5th Cir.1960) (court that admitted irrelevant and prejudicial evidence had a duty to grant a new trial and did not abuse its discretion in doing so).

**II.    SkyWest is entitled to a new trial on damages because the district court erred in refusing to instruct the jury on mitigation of damages for noneconomic loss.**

**A.    Standard of review.**

Jury instructions are reviewed for abuse of discretion. *Janvey v. Dillon Gage, Inc.*, 856 F.3d 377, 388 (5th Cir.2017). "A district court by definition abuses its discretion when it makes an error of law." *Id.* "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. U.S.*, 518 U.S. 81, 100 (1996). Thus, when a challenged jury instruction hinges on a question of law, review is *de novo*. *GE Capital Commercial, Inc. v. Worthington Natl. Bank*, 754 F.3d 297, 302 (5th Cir.2014). This Court

reviews whether the district court's charge is a correct statement of the law and whether it clearly instructs jurors on the principles of law applicable to the factual issues confronting them. *Westport Ins. Corp. v. Pennsylvania Natl. Mut. Cas. Ins. Co.*, 117 F.4th 653, 665 (5th Cir.2024). Review of legal conclusions is plenary. *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 562 (5th Cir.2013).

A defendant is entitled to a jury instruction on an affirmative defense if it is a correct statement of the law and supported by the evidence. *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 425 (5th Cir.1985). Refusal to give a requested jury instruction is error if the instruction is a substantially correct statement of law and there is sufficient evidence to support it. *See Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 578 (5th Cir.2004); *Jackson v. Taylor*, 912 F.2d 795, 798 (5th Cir.1990).

### B.    SkyWest's tendered instruction on mitigation of damages was supported by evidence and correctly stated the applicable law.

SkyWest is entitled to a new trial on compensatory damages because the district court refused to instruct the jury on SkyWest's affirmative defense of failure to mitigate. Although another district judge in the Eastern District held such an instruction was not only permissible but required, *EEOC v. SDI of Mineola, Tex., LLC*, 631 F.Supp.3d 418 (E.D.Tex.2022), the district court disagreed with that ruling based on its misapprehension that there was no general duty at common law to mitigate non-economic damages. Because there was substantial evidence Budd failed to take

-18-

reasonable steps to mitigate her claimed nonpecuniary losses, SkyWest is entitled to a new trial on compensatory damages with the jury properly instructed on Budd's duty to mitigate.

SkyWest tendered this instruction on mitigation of damages based on 5th CIR. PATTERN CIV. JURY INSTR. 15.5 (2024):

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate her damages, that is, to avoid or to minimize those damages. If you find a defendant is liable and that a claimant has suffered damages, that claimant may not recover for any item of damage which she could have avoided through reasonable effort. If you find that a defendant proved by a preponderance of the evidence a claimant unreasonably failed to take advantage of an opportunity to lessen her damages, you should deny if her recovery for those damages that she would have avoided had she taken advantage of the opportunity.

You are the sole judge of whether a claimant acted reasonably in avoiding or minimizing her damages. An injured claimant may not sit idly by when presented with an opportunity to reduce her damages. However, she is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. A defendant has the burden of proving the damages that a claimant could have mitigated. In deciding whether to reduce a claimant's damages because of her failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether a defendant has satisfied its burden of proving that claimant's conduct was not reasonable. (ROA.1387, 3699:7-3700:5).

The tendered instruction is a correct statement of the law on the affirmative defense of failure to mitigate based on the duty to mitigate damages. *See* PATTERN INSTR. 15.5; *e.g.*, *Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16, 29 (5th Cir.1992) ("Under the doctrine of avoidable consequences, an injured party with an otherwise

-19-

valid cause of action who fails to mitigate his damages may not recover those damages shown to have resulted from his failure to use reasonable efforts to avoid or prevent the loss."). As shown below, this defense applies to claims for compensatory damages in Title VII cases.

Pattern Instruction 15.5 is neither mutually exclusive to nor inconsistent with Pattern Instruction 11.14, which specifically applies only to damages for backpay in Title VII cases. Instruction 11.14 does not address compensatory damages in Title VII cases, and there is no Pattern Instruction specifically applicable to compensatory damages in Title VII cases. Mitigation of compensatory damages is thus addressed by the more general 15.5, which SkyWest tendered. (ROA.1387, 3699:7-3700:5).

There was ample evidence at trial to warrant this instruction, including Budd's testimony she stopped treating with a psychiatrist, Dr. Zaidi, after one visit; did not fill the prescription for an antipsychotic drug that Dr. Zaidi recommended; never saw any health care provider after she stopped treating with Dr. Zaidi; and stopped taking an antidepressant another physician prescribed after only three months, before it had time to take effect. (ROA.2915:11-2916:19, 3086:25-3087:8, 3342:2-3343:2, 3301:70:6-72:6, 3424:21-3429:21). Budd also admitted she did not discuss being harassed at work with Dr. Zaidi. (ROA.3084:21-3086:24, 3432:13-3433:17). There was also evidence that despite the fact Budd already had a therapist, Brian Melcher,

she did not discuss any sexual harassment with him, even though she discussed other private matters with him during the time she claimed she was experiencing the harassment. (ROA.3297:53:7-54:22, 3399:77:25-3401:25, 3406:9-3407:20).

Plaintiffs' expert forensic psychologist, Dr. Samuelson, opined that Budd would have benefitted from therapy and medication in October 2019. (ROA.3301:72:13-22). Dr. Zaidi similarly opined that Budd would have benefitted from continuing therapy and from taking the medication she prescribed. (ROA.3431:24-3432:6). This evidence was sufficient to warrant the tendered instruction on Budd's failure to mitigate her nonpecuniary loss

SkyWest moved for a new trial on damages based on the district court's refusal to give its tendered instruction on duty to mitigate (ROA.2127-2137), but the court denied SkyWest's motion, holding that "even if Title VII imposes some duty to mitigate compensatory damages, it does not impose a duty to mitigate emotional harm." (ROA.2781). This was legal error and thus an abuse of discretion.

## C. Congress did not abrogate the common-law doctrine of avoidable consequences for compensatory damages in Title VII cases.

Section 1981a(b)(2) authorizes recovery of compensatory damages in Title VII cases but excludes from such damages "backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964." Section 706(g), codified at 42 U.S.C. § 2000e-5(g), authorizes recovery of back pay,

but also provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." Section 2000e-5(g)(1). However, there is no similar express limitation on recovery of compensatory damages under § 1981a(b)(3), which authorizes typical common-law damages such as "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" as compensatory damages for intentional discrimination in employment under Title VII.[1]

This difference between the statutory damage schemes has led the EEOC to argue that because § 2000e-5(g)(1) expressly incorporates a duty to mitigate damages, whereas § 1981a(b)(3) does not, there is no duty to mitigate compensatory damages in a Title VII employment discrimination case. This argument fails because a plaintiff always has a common-law duty to mitigate damages, and because nothing in § 1981a(b)(3) evinces the clear intent of Congress to abrogate the common-law doctrine of avoidable consequences and its concomitant duty to mitigate compensatory damages. Congress is presumed to be familiar with common-law principles such that those principles are intended to persist absent specific statutory language

---

[1]Because § 1981a(b)(3) authorizes recovery of "future pecuniary losses," compensatory damages are not limited to noneconomic damages.

to the contrary. *Umphress v. Hall*, 479 F.Supp.3d 344, 350 (N.D.Tex.2020). Because Congress is presumed to have been aware of the common-law duty to mitigate when it enacted Title VII, and because it did not expressly prohibit, eliminate, or exclude a duty to mitigate compensatory damages when it enacted § 1981a, the only possible conclusion is that Congress did not intend for compensatory damages under Title VII to be exempt from the common-law doctrine of avoidable consequences.

### D. *EEOC v. SDI*: Plaintiffs in Title VII cases have a duty to mitigate nonpecuniary compensatory damages.

In *EEOC v. SDI*, 631 F.Supp.3d at 420-22, Judge Barker rejected the EEOC's argument there was no duty to mitigate compensatory damages in Title VII actions and held instead that because Congress had not expressly or impliedly abrogated the common-law doctrine of avoidable consequences in enacting Title VII, the complaining party had a duty to mitigate compensatory damages, including noneconomic damages. At issue in *SDI* was EEOC's objection to a proposed jury instruction on the affirmative defense of mitigation of damages, based on its position that in Title VII employment-discrimination cases, the duty to mitigate does not apply to nonpecuniary harm.

Judge Barker began his analysis with the principle that federal law allows an aggrieved person to recover compensatory damages for nonpecuniary loss from em-

ployment discrimination, and specifically allows compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). *See* 42 U.S.C. § 1981a(a)(1) (allowing a "complaining party" to recover compensatory damages); 42 U.S.C. § 1981a(d)(1) (defining "complaining party" to include EEOC or a person who may sue under Title VII). That law, Judge Barker recognized, "has no express requirement that a claimant mitigate damages." *SDI*, 631 F.Supp.3d at 419. Nevertheless, he also recognized, "Congress is understood to legislate against a background of common-law adjudicatory principles." *Id*. (quoting *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 108 (1991)). So, "'where a common law principle is well established, ... the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident.'" *Id.* at 419-20 (quoting *Astoria*, 501 U.S. at 108). As Judge Barker noted, "That is not a strict 'clear statement' rule but rather an 'interpretive presumption.' The presumption is rebutted if Congress has 'expressly or impliedly' evinced a contrary direction." *Id*. at 420 (footnotes omitted).

Judge Barker then turned to whether Congress had rebutted the presumption that the common-law duty to mitigate damages applies in Title VII cases, since the common law imposes the duty to mitigate damages regardless of the nature of the

case in which damages are claimed: "Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided." C. McCormick, LAW OF DAMAGES § 33 at 127 (1935). *See Gallup v. Omaha Prop. & Cas. Ins. Co.*, 282 Fed.Appx. 317, 321 (5th Cir.2008) (unpublished) ("Because the duty to mitigate is a common law duty, it exists 'in the absence of an explicit policy provision or statutory provision imposing such a duty.'"). This is the so-called "doctrine of avoidable consequences," which is intended to "discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts, or from actively increasing such loss where prudence would require that such activity cease." McCormick at 127.

Judge Barker found that because the duty to mitigate damages is well-established under common law, the interpretive presumption applies to Title VII. "First, the duty for a person to mitigate his or her harm from wrongful conduct is an established duty of common law.... Second, Congress has not expressly or impliedly evinced a contrary expectation on this issue." *SDI*, 631 F.Supp.3d at 420. Judge Barker then found, *id.*, that a common-law duty to mitigate damages is not

incompatible with the compensatory damages allowed under Title VII:

> Nothing about the nature of nonpecuniary harm renders it inherently incompatible with mitigation by a claimant. For instance, a person might reduce the extent of emotional distress by following a doctor's advice to engage in counseling. Or, in the case of a person claiming damages for inconvenience and mental anguish arising from not having a job, the person might mitigate that nonpecuniary harm by seeking other jobs. The statute's allowance of compensatory damages for nonpecuniary loss is not inconsistent with the common-law duty to mitigate damages.

He then determined that no other provision of the statute is inconsistent with the duty to mitigate nonpecuniary harm. He found that the separate Title VII provision, 42 U.S.C. § 2000e-5(g)(1), which allows courts to order "reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate," included a limit on recoverable damages because its predecessor did not: "That language traces back to § 706(g) of the Civil Rights Act of 1964, in which only that relief and injunctive relief were mentioned. It was only in 1991 that Congress allowed the complaining party in a § 706 lawsuit to 'recover compensatory and punitive damages' in addition to the relief authorized by § 706(g)." *Id*. at 420-21.

Judge Barker rejected EEOC's argument that Congress's inclusion, in 1964, of a mitigation-of-loss limit on the equitable relief of backpay implicitly negates the availability of the common-law mitigation defense to the remedy of compensatory damages that Congress authorized in 1991. In holding that the doctrine of avoidable

consequences applies to compensatory damages recoverable under § 1981a(b)(3), Judge Barker rejected the rationale of cases like *EEOC v. Fred Meyer Stores, Inc.*, 954 F.Supp.2d 1104 (D.Or.2013), which misapplied the legal maxim *expressio unius est exclusio alterus* to conclude that Congress did not intend to require Title VII plaintiffs to mitigate their compensatory damages:

> [T]hat canon requires a specific enumeration of particulars that can reasonably be thought to express all members to which a grant or prohibition applies. For instance, if § 1981a had set out a list of the available affirmative defenses to compensatory damages, and if that hypothetical list excluded mitigation, then the canon might apply. But § 1981a has no such list.

> Neither is EEOC's position supported by § 706(g) of the Civil Rights Act of 1964, which is codified at 42 U.S.C. § 2000e-5(g). That provision does not address any remedies other than injunctive relief and reinstatement with or without back pay. Section 706(g) simply does not authorize compensatory damages for nonpecuniary loss. Congress's inclusion of the mitigation defense to an award of back pay authorized in the 1964 law could not implicitly preclude that defense to a different remedy that did not exist at the time. [Footnotes omitted].

*SDI*, 631 F.Supp.3d at 421.

In contrast, Judge Barker noted, Congress's 1991 law authorized "compensatory and punitive damages" broadly. 42 U.S.C. § 1981a(a)(1)–(3). That difference in scope, he observed, "easily explains the stylistic difference when it comes to defense."

> The 1964 law may well have needed to mention the mitigation defense to avoid implying its exclusion, as § 706(g)'s definition of back-pay relief excludes two things. It excludes what a person could have earned in the

-27-

interim period between the wrong and the remedy (the mitigation concept from common law). And it excludes what a person did in fact earn in that interim period (a causation-of-loss concept from common law). Had the law mentioned only the second concept in listing the exclusions, the *expressio unius* canon might have supported the inference that the mitigation limit did not apply.

In contrast, the 1991 legislation took a different approach and simply mentioned "compensatory and punitive damages" without listing the defenses to such damages. There is no fair implication that Congress was somehow, silently precluding common-law defenses when enacting this law of different scope, decades later, codified in a different section of the U.S. Code.

Nor is such an implication hinted at from statutory goals. To be sure, "one of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" But common-law defenses are consistent with that goal. We know that because the Civil Rights Act of 1964 itself allowed a mitigation defense to the monetary relief that it provided for employment discrimination. So the statutory "make whole" objective is consistent with recognizing common-law defenses. [Footnotes omitted].

*SDI*, 631 F.Supp.3d at at 421-22.

Judge Barker rejected EEOC's reliance on *Fred Meyer*, which reached a contrary conclusion, because it "gets two things wrong." In its original holding, the court in *Fred Meyer* denied the motion to strike the affirmative defense of failure to mitigate damages, basing its ruling on cases which held a plaintiff has a duty to mitigate damages, even damages for emotional distress, by taking reasonable steps

to alleviate the claimed distress. *Id.*, 954 F.Supp.2d at 1114-15.[2] On EEOC's motion

for reconsideration, however, the *Fred Meyer* court changed its ruling, concluding

that "Congress' deliberate decision to carve out this duty to mitigate [back pay]

---

[2] *See, e.g.*, *Gomez v. American Empress L.P.,* 189 F.3d 473 (9th Cir.1999) (finding the court appropriately reduced both economic and noneconomic damages when plaintiff unreasonably failed to mitigate his damages, including harm to his psychological well-being from being unemployed); *Asante-Chioke v. Dowdle*, 2024 WL 2863379, *6 (E.D.La.2024) (denying plaintiff's motion to strike defense that she did not take reasonable steps to mitigate her emotional distress damages); *Palla v. LM Sports, Inc.*, 2019 WL 6464621, *9 (E.D.Cal.2019) (defendant "correctly argues plaintiffs have a duty to mitigate both economic and non-economic damages"); *Kaur v. City of Lodi*, 2016 WL 627308, *5 (E.D.Cal.2016) (ruling that defendants properly asserted affirmative defense for plaintiff's failure to mitigate emotional damages because she did not seek counseling); *Petroci v. Transworld*, 2012 WL 5464597, *4 (W.D.N.Y.2012) (applying doctrine of avoidable consequences to emotional distress injuries by holding that defendants should be given the opportunity to determine through discovery whether plaintiff failed to mitigate her actual damages by failing to seek medical or psychological counseling for alleged emotional distress); *Bartley v. Chom Kim*, 2012 WL 13102304, *1 (M.D.Fla.2012) ("evidence of Plaintiffs' prior arrests may be admissible to refute or mitigate the claims of damages for emotional and/or psychological distress."); *Harms v. Lab. Corp. of Am.*, 155 F.Supp.2d 891, 900 (N.D.Ill.2001) (denying motion *in limine* to preclude defendant from offering evidence that plaintiff failed to mitigate emotional distress damages); *Neal v. Director*, 1995 WL 517249, *15 (D.D.C.1995) (reducing plaintiff's damages for refusal to take anti-depressants to mitigate her depression following injury); *In re Air Crash Disaster*, 982 F.Supp. 1101, 1111 (D.S.C.1997) (explaining that a plaintiff has the duty to mitigate damages and the "court can consider whether that person has failed to follow the advice of their physician or other treating professional"); *Salas v. U.S.*, 974 F.Supp. 202, 211 (W.D.N.Y.1997) (implicitly finding duty to mitigate by concluding that plaintiff cannot be charged with failure to mitigate damages because she made reasonable efforts to treat and cure her condition); *Baker v. Dorfman*, 1999 WL 191531, *6 (S.D.N.Y.1999) (holding that jury could have reasonably concluded, after receiving instruction on mitigation of damages related to pain and suffering, that plaintiff took reasonable steps to alleviate his distress); *Chuy v. Philadelphia Eagles Football Club*, 431 F.Supp. 254, 263–64 (E.D.Pa. 1977) (upholding jury instruction on mitigation of emotional damages), *aff'd*, 595 F.2d 1265 (3d Cir.1979).
.

damages [in the 1972 Amendments to Title VII] clearly signifies that Congress did not intend to create a duty to mitigate all compensatory damages. If Congress intended there to be a duty to mitigate all compensatory damages, it is illogical that it chose to single out the duty to mitigate back pay alone." *Id.*, 954 F.Supp.2d at 1128.

But, as Judge Barker explained, *Fred Meyer* "gets the legislative context wrong":

> The decision assumes that the relevant legal enactment is "Congress's 1972 Amendments to Title VII," which that court treated as adding an authorization of back pay to the law's existing authorization of compensatory damages. Hence, that decision refers to the 1972 amendments as having "single[d] out" back pay "alone" in enacting a duty to mitigate loss.
>
> But that is wrong. The 1972 amendments made no change relevant to this issue. An award of back pay, with its mitigation limit, was allowed since the Civil Rights Act of 1964. And, critically, neither the 1964 act nor the 1972 amendments authorized compensatory damages for nonpecuniary loss in a § 706(g) action. So there is nothing "illogical" about the 1964 act (or the 1972 amendments) having addressed mitigation as to back pay only. That was simply the only monetary relief specified in § 706(g).

*SDI*, 631 F.Supp.3d at 422. The second problem with *Fred Meyer*, Judge Barker pointed out, *id.*, is that it "gets the legal presumption wrong":

> From Congress's silence as to mitigation when allowing compensatory damages for nonpecuniary loss (in the 1991 law), the decision reasons that Congress "did not intend to create a duty to mitigate all compensatory damages." But that is not the question. Congress did not need to "create" a duty to mitigate compensatory damages. That duty is an established part of the common law, against which Congress is presumed to legislate. The question is simply whether the civil-rights law is inconsistent, expressly or implicitly, with application of the mitigation doctrine. As explained above, it is not.

More to the point, nothing in § 1981a(b)(3) expresses the clear intent of Congress to abrogate the common-law doctrine of avoidable consequences. *See U.S. v. Texas*, 507 U.S. 529, 534 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law."). Accordingly, Judge Barker overruled EEOC's objection to the mitigation component of the jury instruction on compensatory damages for non-pecuniary harm. *SDI*, 631 F.Supp.3d at 423.[3]

Following Judge Barker's ruling in *SDI*, employment law treatises have recognized that "Title VII claimants have a duty to mitigate compensatory damages for nonpecuniary losses they sustain. The duty to mitigate is well established under common law, and Congress has not expressly or impliedly evinced a contrary expectation on that issue." *See* 7 EMP. COORD. EMPLOYMENT PRACTICES § 74:3 (2025); 2 EMP. DISCRIM. COORD. ANALYSIS OF FEDERAL LAW § 64:7 (2025); 1 GUIDE TO EMPLOYMENT LAW & REGULATION § 2:64 (2025). That these treatises all cite *SDI* in

---

[3]As Judge Barker pointed out in footnote 18 of *SDI*, cases following *Fred Meyer* on this point simply adopted its reasoning without analysis. These cases include those cited by EEOC in its Trial Brief on Compensatory and Punitive Damages (ROA.1514), such as *U.S. v. Regents of N.M. State Univ.*, 2018 U.S. Dist. LEXIS 169861 (D.N.M. Oct. 1, 2018); *EEOC v. Fair Oaks Dairy Farms, LLC*, 2012 U.S. Dist. LEXIS 154570 (N.D.Ind. Oct. 29, 2012); *EEOC v. Global Horizons, Inc.*, 2014 U.S. Dist. LEXIS 26342 (D.Haw. Feb. 28, 2014). EEOC's Trial Brief failed to cite or distinguish *SDI*, even though the same EEOC lawyers in this case represented EEOC in *SDI*.

support of the position that Title VII claimants have a duty to mitigate compensatory damages for nonpecuniary losses—while not citing any of the cases EEOC cited in its Trial Brief[4] (ROA.1514)—signifies that *SDI* is recognized as authoritative on the issue.

### E. The duty to mitigate nonpecuniary harm is recognized at common law and has long been recognized in Texas.

Notwithstanding *SDI*'s legislative analysis, the district court nevertheless held in denying SkyWest's new trial motion that "even if Title VII imposes some duty to mitigate compensatory damages, it does not impose a duty to mitigate emotional harm." (ROA.2781).

> SkyWest's reading of Title VII does not support the inference that Title VII claimants have a duty to mitigate their ***emotional harm***. This is so because the canon of construction that SkyWest relies upon does not apply when the relevant common law is not "well-established," *see Pasquantino v. United States*, 544 U.S. 349, 359, 360-61 (2005), which the supposed common-law duty to mitigate emotional harms plainly is not. [Emphasis original]. (ROA.2781-2782).

Disagreeing with *SDI*, the court concluded that "even if Title VII imposes some duty to mitigate compensatory damages, it does not impose a duty to mitigate emotional harm," and that "SkyWest's proposed instruction therefore was not correct as a matter of law because it assumed that Budd had a duty to mitigate her emotional

---

[4]*See supra* note 3.

harm." (ROA.2782).

The basis of the court's ruling is that: (1) "to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law," *see U.S. v. Texas*, 507 U.S. 529, 534 (1993); (2) this canon of construction does not apply when the relevant common law is not "well-established," *see Pasquantino v. U.S.*, 544 U.S. 349, 359, 360-61 (2005); and (3) the common-law duty to mitigate emotional harms plainly is not "well-established." The third premise, however, is not valid. The common-law duty to mitigate nonpecuniary loss is in fact well-established. *See supra* note 2. It is especially well-established in Texas.

The doctrine of avoidable consequences, as formulated in RESTATEMENT (SECOND) OF TORTS § 918 (1979), makes no distinction between economic and non-economic loss. In other civil cases, juries are routinely asked to determine whether the plaintiff failed to mitigate noneconomic damages.[5] *See supra* note 2. Even the *Fred Meyer* court recognized "there are several cases indicating that the imposition of a duty to mitigate emotional damages is appropriate." *Id*., 954 F.Supp. at 1114. It

---

[5]*See, e.g.*, *White v. BNSF Ry. Co.*, 726 Fed.Appx. 603, 604 (9th Cir.2018) (district court did not abuse discretion in admitting evidence to establish plaintiff's failure to mitigate emotional distress damages); *Norvell v. BNSF Ry. Co.*, 2022 WL 1127714, *5 (W.D. Wash.2022) (jury instructed that "Plaintiff has a duty to use reasonable efforts to mitigate his emotional harm damages"), *aff'd*, 2023 WL 3299988 (9th Cir.2023); *Martinez v. Valdez*, 125 F.Supp.3d 1190, 1206 n.15 (D.Colo.2015) (jury instructed on defense that plaintiffs failed to mitigate damages by not seeking post-incident counseling for emotional distress).

found *Gomez v. American Empress L.P.,* 189 F.3d 473 (9th Cir.1999) particularly

persuasive:

> In *Gomez*, the plaintiff hurt his back while working and could no longer per-
> form his job duties. He sued his employer for economic injuries, pain and
> suffering, and emotional injuries. The trial court reduced the plaintiff's award
> by twenty-five percent, reasoning that if plaintiff had tried to find other em-
> ployment or otherwise mitigated his damages, both economic and non-eco-
> nomic damages would have been reduced. This holding indicates that the
> Ninth Circuit supports the imposition of a duty to mitigate emotional dam-
> ages. [Citation omitted].

*Fred Meyer* thus concluded, at least initially, that there was a genuine fact

issue whether the plaintiffs, who alleged the defendant created a sexually hostile

work environment, ought to have their damages reduced for failing to seek psycho-

logical counseling.

Texas courts have explicitly recognized that the common-law doctrine of

avoidable consequences applies to noneconomic harm. *See, e.g., Moulton v. Alamo

Ambulance Serv., Inc.*, 414 S.W.2d 444, 450 (Tex.1967) (plaintiff cannot recover

damages for physical and mental pain and suffering "proximately caused by failure

of an injured person to care for and treat his injuries, if any, as a reasonable prudent

person would in the exercise of ordinary care under the same or similar circumstan-

ces."); *Texas Animal Health Commn. v. Garza*, 27 S.W.3d 54, 63 (Tex.App.2000)

(employee who sued state agency in anti-retaliation lawsuit was entitled to actual

damages, including mental anguish, subject to employee's duty to mitigate

-34-

damages); *Rogan v. Lewis*, <u>975 F.Supp. 956, 966</u> n.14 (S.D.Tex.1997) ("Had Plaintiff pursued an appeal with the Texas Education Agency, she might have been able to mitigate some or all of her emotional distress damages that may flow from the due process deprivation."). As long ago as 1902 Texas courts recognized that the defendant in a personal injury action is entitled to an instruction that the plaintiff cannot recover damages "for all suffering, mental or physical, which plaintiff could have prevented by the exercise of prudence and reasonable care, treatment, and attention." *St. Louis S.W. Ry. Co. v. Ball*, <u>66 S.W. 879, 882</u> (Tex.Civ.App.1902).

Mitigation of nonpecuniary damages is something an ordinary jury is fully capable of deciding, since the standard for mitigation is that of ordinary care, *i.e.*, "what an ordinary prudent person would have done under the same or similar circumstances." *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, <u>995 F.Supp.2d 647, 651</u> (S.D.Tex.2014); *Zimmerman Truck Lines, Inc. v. Pastran*, <u>587 S.W.3d 847, 862</u> (Tex.App.2019). Determining whether a plaintiff took reasonable steps to minimize nonpecuniary loss is no more difficult than assigning a monetary value to intangible harm in the first place. A jury capable of determining noneconomic damages is equally capable of determining whether the plaintiff has increased any noneconomic damages by failing to mitigate them. *See* PATTERN INSTR. 15.5 ("You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his

damages."). If juries can do it in other civil cases, they can do it in Title VII cases like this one. *See United Neurology*, 995 F.Supp.2d at 651 ("Normally mitigation of damages is an issue for the jury at trial.").

Not only is the common-law doctrine of avoidable consequences applicable to claims for nonpecuniary damages under Title VII, but the doctrine is necessary to avoid the moral hazard it is intended to avert. *See* McCormick, DAMAGES at 127. As one commentator explains, "The absence of mitigation rules means that tort liability for emotional injuries creates moral hazard problems that tend to result in inefficiently low levels of post-injury care by plaintiffs and systematic overcompensation."

> For example, if psychiatric treatment might reduce or eliminate a plaintiff's emotional distress, the plaintiff might nonetheless forgo such treatment if he knows that the defendant will be liable for the full, unmitigated level of distress. Looking at emotional distress law from the mitigation perspective reveals that some of the rules governing emotional distress liability may exacerbate the moral hazard. For example, in the absence of a mitigation rule, the requirement in some torts that plaintiff must have "severe" distress may actually give plaintiff a disincentive to try to reduce his damages.

E. Kantorovich, *The Mitigation of Emotional Distress Damages*, 68 U.CHI.L.REV. 491, 491 (2001). "Thus, without a mitigation rule, plaintiffs would have a perverse incentive to sit back and let their damages mount, even though they could stanch the loss by exercising reasonable care." *Id*. at 498. As one judge in the Southern District of Texas put it, "a plaintiff cannot sit still and let damages pile up when reasonable steps would prevent further losses." *David H. v. Spring Branch Indep. Sch. Dist.*,

569 F.Supp. 1324, 1340 (S.D.Tex.1983). For similar reasons, commentators have urged courts to apply the doctrine of avoidable consequences to noneconomic loss. *See* N. Farahany, *The Costs of Changing Our Minds*, 69 EMORY L.J. 75, 90-104 (2019); L. Noah, *Comfortably Numb: Medicalizing (and Mitigating) Pain-and-Suffering Damages*, 42 U.MICH.J.L.REFORM 431, 440-47 (2009).

This fundamental rationale for the doctrine of avoidable consequences applies equally to compensatory damages for emotional distress awarded under Title VII. Unless held to the duty to mitigate nonpecuniary damages, claimants in employment discrimination cases will have no incentive to do so, solely in order to increase their recovery. The notion urged by EEOC below that a plaintiff seeking monetary damages for emotional distress already has a motive to mitigate her damages because "feeling better is its own incentive" is simply naïve, since plaintiffs (and their counsel) always have a strong and clear incentive to maximize their injuries in hopes of a big verdict. Allowing recovery of noneconomic damages without the check of the duty to mitigate can only reward plaintiffs who fail to do what ordinary prudent persons would have done to minimize their damages, which is precisely the moral hazard the doctrine of avoidable consequences is intended to avert. *See Moulton*, 414 S.W.2d at 450 ("[T]he better practice generally would be to instruct the jury that in arriving at its answer to the issue it should not include any sum for physical and

mental pain and suffering, loss of earnings, etc., if any, proximately caused by failure of an injured person to care for and treat his injuries, if any, as a reasonable prudent person would in the exercise of ordinary care under the same or similar circumstances.").

Because the duty to mitigate applies to compensatory damages in Title VII cases and thus to noneconomic loss, the jury here should have been allowed to decide whether the charging party took appropriate steps to minimize her claimed non-pecuniary damages. *See SDI*, 631 F.Supp.3d at 423.

> **F.** **Because it was error not to instruct the jury that Budd had a duty to mitigate her compensatory damages, SkyWest is entitled to a new trial on compensatory damages.**

Based on *SDI*, SkyWest was entitled to have its tendered instruction on the affirmative defense of failure to mitigate compensatory damages given to the jury, and the district court erred in refusing to give it despite the uncontested evidence at trial, including her refusal to medicate or seek therapeutic help for emotional distress, that Budd did not mitigate her claimed noneconomic damages. Failure to follow a physician's direction and discontinuing medical treatment are textbook examples of failure to act reasonably in avoiding or minimizing damages. *See Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1139 (5th Cir.1985) (failure to seek medical treatment bars recovery of damages that would have been averted had

-38-

proper treatment been obtained or medical advice been followed); *Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 560 (Tex.2015) (failure to mitigate is demonstrated when plaintiff disregards physician's advice or refuses treatment for alleged injuries); *Moulton*, 414 S.W.2d at 447 ("We recognize the universality of the rule that an injured person cannot recover damages which can be avoided by that care and treatment of his injury which an ordinary prudent person would exercise in the same or similar circumstances...."); *Thompson v. Quarles*, 297 S.W.2d 321, 327 (Tex.Civ.App.1956) ("one may not recover damages which can be avoided by submission to medical treatment, including operative procedure, when under similar circumstances a man of ordinary prudence would submit to such procedures in his own interest.").

The district court's erroneous refusal to give this instruction allowed the EEOC to argue to the jury that Budd had no duty to minimize her damages notwithstanding the common-law doctrine of avoidable consequences, thus exacerbating the moral hazard inherent in allowing claimants to let damages pile up when there is no duty to exercise reasonable prudence to avert losses that could be avoided by reasonable efforts. (ROA.3773:24-3774:2). Because SkyWest was entitled to an instruction on the duty to mitigate, *SDI*, 631 F.Supp.3d at 423, and because it was prejudiced by the instruction not being given, it is entitled to a new trial on

compensatory damages. *See Video Intl. Prod., Inc. v. Warner-Amex Cable Communs., Inc.*, 858 F.2d 1075, 1088 (5th Cir.1988); *see also Moulton*, 414 S.W.2d at 449 (defendant was entitled to jury instruction on failure to mitigate where evidence showed that plaintiff's disregard of physician's advice aggravated injury); *Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220, 226 (Tex.App.1999) (where defendant raised issue of mitigation of damages in pleadings, presented evidence of failure to mitigate, and tendered adequate instruction, trial court's refusal to instruct jury on duty to mitigate was error entitling defendant to new trial).

## III.    The evidence is insufficient to support punitive damages.

### A.    Standard of review.

When punitive damages are awarded by a jury, the Court has a special responsibility to review the evidence supporting the award to determine whether it is sufficient to establish that the defendant's conduct rose to the level of culpability necessary for imposition of punitive damages. *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 40-42 (1991). Exacting review ensures that an award of punitive damages is based upon an "application of law, rather than a decisionmaker's caprice." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (quoting *Cooper Ind,, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436 (2001)). The issue on appeal from denial of JMOL is whether "a reasonable jury would not have

a legally sufficient evidentiary basis to find for the party on that issue." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 301 (5th Cir.), *cert. denied,* 145 S.Ct. 168 (2024). The Court must therefore review the record to determine whether the evidence is sufficient for the jury to determine that the defendant's behavior was malicious or made with reckless indifference to warrant a punitive damage award. *50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*, 180 F.3d 247, 256 (5th Cir.1999).

**B.    Title VII punitive damage standards.**

Under 42 U.S.C. § 1981a(b)(1), "A complaining party may recover punitive damages under this section against a respondent ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." To recover punitive damages, a plaintiff must show more than mere discrimination. *Kolstad v. American Dental Assn.*, 527 U.S. 526, 534 (1999). A Title VII plaintiff may recover punitive damages only upon proof the defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Wantou v. Wal-Mart Stores Texas, LLC*, 23 F.4th 422, 439 (5th Cir.2022), *cert. denied,* 143 S.Ct. 745 (2023). This is a higher standard than the showing necessary for compensatory damages. *Id*. Thus, "not every sufficient proof of pretext and discrimination is sufficient proof of malice or reckless

indifference." *Hardin v. Caterpillar, Inc.*, 227 F.3d 268, 270 (5th Cir.2000).

Moreover, to recover punitive damages, a plaintiff must impute liability for punitive damages to the employer. *Kolstad*, 527 U.S. at 539. The plaintiff must establish that an employee of the defendant acting in a "managerial capacity" acted with malice or reckless indifference to the plaintiff's federally protected rights. *Id.* at 543, 545–46. Generally, a "managerial capacity" employee must be "important, but perhaps need not be the employer's top management, officers, or directors to be acting in a managerial capacity." *Id.* at 543 (internal quotation marks omitted). Determining whether an employee acts in a "managerial capacity" is a "fact-intensive inquiry." *Id*. Relevant factors include "the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished." *Id*.

Ultimately, the terms "malice" and "reckless indifference" "focus on the actor's state of mind." *Id*. at 535. Malice has been described as "evil motive or intent," and reckless indifference has been described as "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Id*. at 536. Both "pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id*. at 535. The plaintiff must show the defendant acted with the awareness that it was or may

have been violating the law, not merely with the awareness that it was engaging in acts constituting discrimination. *Id.* at 535–36. Accordingly, even intentional discrimination may not support punitive damages if the actor lacks the required awareness that such conduct is illegal. *Id*. at 536.

Thus, the defendant employer "must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable for punitive damages." *Id.* "[E]ven if particular agents acted with malice or reckless indifference, an employer may avoid vicarious punitive damages liability if it can show" the agents' actions were contrary to the employer's good-faith efforts to comply with Title VII. *EEOC v. Boh Bros. Constr. Co., LLC*, 731 F.3d 444, 467 (5th Cir.2013) (citing *Kolstad*, 527 U.S. at 545–46). Given these stringent standards, "a plaintiff faces ... a 'formidable burden' in seeking punitive damages for employment discrimination." *Id*.

### C. The evidence failed to establish the conduct of SkyWest's managerial employees was malicious or recklessly indifferent.

#### 1. Punitive damages cannot be based on retaliation because the jury found none.

The award of punitive damages cannot be based on any alleged retaliation by SkyWest because the jury expressly determined SkyWest took no adverse employment action against Budd. (ROA.1511, Answer No.4). However, this was

a major aspect of EEOC's punitive damages claim against SkyWest, especially the claim that the indefinite administrative leave Kellie Dehais placed Budd on was retaliatory. (ROA.3723:21-3724:11).

Without retaliation to base the punitive damages verdict on, no other evidence in the record supports it. The other evidence EEOC identified in its closing argument as supporting punitive damages—the conduct of SkyWest's managerial employees Hansen, Widmer, and Dehais (ROA.3729:18-3730:7)—is insufficient to support the award.

### 2. The evidence failed to establish that the conduct of SkyWest's managerial employees was malicious or recklessly indifferent.

Any culpability for punitive damages must be premised on the conduct of SkyWest's managerial employees, not that of mechanics, parts clerks, or others who worked in the parts department. At trial EEOC only identified three managerial employees whose conduct was alleged to be malicious or recklessly indifferent to Budd's rights: maintenance supervisor Dallin Hansen, parts manager Dustin Widmer, and Employee Relations Manager Kellie Dehais, all named in the punitive damages instructions. (ROA.3794:20-3795:5). There was no evidence, however, that these managerial employees acted with "evil motive or intent." At most, EEOC's evidence showed only negligence rather than malice

-44-

or reckless indifference.

### a.     *Dallin Hansen.*

The district court's denial of JMOL was based entirely on Budd's uncorroborated testimony about the conduct of Dallin Hansen, the maintenance supervisor Budd claimed told her she would be "sold into prostitution." (ROA. 2880:17-2881:10, 2896:18-22). The court addressed only the evidence relating to Hansen, which it found "legally sufficient" by itself to support the requisite finding of malice or reckless indifference. (ROA.2773). It concluded "there was legally sufficient evidence for a reasonable jury to have found that Hansen—and, vicariously, SkyWest—perceived the risk that Hansen's conduct violated Budd's federally protected rights." (ROA.2774). This conclusion was based on Kellie Dehais's testimony that every SkyWest employee receives computer-based training on SP53 "[u]pon hire .., when their job code changes to a leadership position, ... and then annually every year after." (ROA.3248:7-11). "From this evidence," the court held, "a reasonable jury could have inferred that Hansen, a SkyWest managerial employee, was aware that discriminating against Budd based on her sex violated federal law, and therefore that he acted with malice or reckless indifference to her federally protected rights." (ROA.2774).

The issue regarding punitive damages is therefore whether there was sufficient evidence that Hansen's participation in the harassment and witnessing others engaging in harassment was malicious and recklessly indifferent to Budd's federally protected rights. This required a showing that Hansen acted with awareness he may have been violating federal law, not merely with awareness he was engaging in acts of discrimination. *Kolstad*, 527 U.S. at 535-36. Although the court cited general testimony by Dehais on how often sexual harassment training is provided to SkyWest's employees, including managers, there was no testimony specific to Hansen and no evidence Hansen actually received sexual harassment training upon hire or annually. EEOC thus failed to show Hansen had sufficient knowledge of SkyWest's policies necessary to act with malice and reckless indifference.

### b.    *Dustin Widmer.*

EEOC also contended Widmer acted with malice or reckless indifference sufficient to support punitive damages when he ignored several complaints from Budd about harassing conduct, but the evidence at trial did not support this contention. Budd testified she first contacted Widmer, who worked in Oklahoma City, on September 4, 2019, but did not tell him what specific comments had been made or give him any details about what happened, and did not identify

anyone by name who had made the comments. (ROA.3032:9-3034:17). Widmer confirmed this lack of detail in his deposition testimony. (ROA. 3171:13-3175:6). Widmer testified that Budd "was pretty vague and non-specific. She didn't identify anybody but just said mechanics were making her feel uncomfortable. (ROA.3172:10-12). As parts manager, however, Widmer lacked authority to deal with mechanics. (ROA.3175:9-11). "I offered to talk to Dallin [Hansen] about this. That's when she said 'no' because she wanted to see if the situation would settle down on her own without any further instigation." (ROA.3172:16-18). "I told her to let me know if this doesn't settle down or escalates, and then I would report it to H.R. And that's how the conversation stopped." (ROA. 3172:23-25). Widmer's account of the discussion is consistent with Budd's account in her December 14, 2019 email. (ROA.3039:21-3040:14). Because Budd suggested the offending conduct was coming from the mechanics, whom he did not supervise, Widmer did not believe he could do anything about it himself. (ROA.3176:7-13). Widmer's response on September 4 did not evince any malice or reckless indifference to Budd's rights. He testified he wanted to respect Budd's privacy and wishes by not taking an action at the time. (ROA. 3190:21-3191:16).

Although Budd testified she called Widmer a few days later and left a

voicemail she claimed was not returned, she could not say when she called or whether Widmer ever received it. (ROA.3076:6-11, 3077:5-10). Any alleged failure of Widmer to return this voicemail amounts to negligence at most.

Widmer testified that after Budd complained to him in a December 14, 2019 (Friday) email, he was not aware the conduct was still ongoing because he had not heard from her since September, when he met with her to try to address her concerns. He again offered to contact Hansen to deal with the mechanics. (ROA.3177:15-3178:3). Following receipt of the email, Widmer texted Kellie Dehais, SkyWest's Employee Relations Manager, on Monday, December 16, 2019, and forwarded her Budd's email. (ROA.3170:8-18, 3260:1-6). Widmer's failure to take any further action again amounted at most only to negligence, since Dehais received Budd's formal complaint that same day.

Even if Widmer's failure to report the September 4, 2019 conversation with Budd was contrary to SkyWest's good faith compliance efforts, Dehais specifically directed Widmer to report all instances of sexual harassment, unprofessional conduct, and discrimination to Employee Relations per SP53 and the law during her investigation into Budd's claims. Dehais testified Widmer was clearly upset and "did not know what to do" when he forwarded Budd's complaints to Human Resources. (ROA.3260:18-3261:2). This establishes that Widmer's failure to report the

-48-

September 4, 2019 conversation with Budd does not rise to the level of malice or reckless indifference.

### c.    *Kellie Dehais.*

After receiving Widmer's report, Dehais promptly conducted a thorough investigation into Budd's allegations. (ROA.3259-3277). On December 16, 2019, she contacted Budd to discuss Budd's December 14 email to Widmer and initiate a formal investigation into Budd's allegations of harassment. As part of her investigation, Dehais interviewed the parts clerks and took corrective action. (ROA.3161:7-3164:18). She interviewed Carlos Avalo, a mechanic Budd accused of improper conduct. (ROA.3185:22-3188:17). Dehais also explained harassment reporting obligations to Widmer. (ROA.3276:24-3277:8). Dehais concluded her investigation, finding that four employees had engaged in conduct that violated SkyWest's sexual harassment policy. (ROA.3277:24-3278:17). Three of those employees were notified and received a corrective action. (ROA. 3276:23-3277:1, 3280:14-3281:13). Although EEOC has claimed the fourth employee, Jim Lusk, was never told his behavior violated SkyWest's policy against harassment, Dehais testified he was away from work so corrective action could not be taken. (ROA.3277:1-2).

EEOC nevertheless claimed Dehais acted with malice and reckless

indifference because she did not interview all witnesses, including Lusk, ask follow-up questions of witnesses, or write up an investigative summary. (ROA.2553). However, Dehais's alleged failure to ask every follow-up question EEOC believes should have been asked of a witness is hardly evidence of malice or reckless indifference, particularly where EEOC offered no evidence of what its claimed "adequate" investigation would have revealed about Budd's complaint or how it would have made any difference to the outcome of Dehais's investigation. Even if Dehais could not "recall" asking an employee what sex talk they were referring to in an interview, she asked other employees what type of language or "talk" they had heard at SkyWest DFW. (ROA.3267:13-3268:7). Although Dehais did not ask for the pictures mentioned by one witness about the candy dish incident, this was not malicious or recklessly indifferent. Dehais interviewed ten witnesses and issued corrective action, all while Budd was on paid administrative leave and negotiating a settlement with SkyWest's legal department. (ROA.3586:5-21). While Dehais's typical practice was to write an investigation summary, she instead provided her findings orally in a February 2020 meeting, after Budd's counsel had already contacted SkyWest. (ROA.3277:11-21).

Despite EEOC's criticisms of Dehais's investigation for failing to interview everyone Budd accused of contributing to or witnessing the hostile work

environment and to follow up with employees who heard sexual remarks for details, it offered no evidence, expert or otherwise, of what a reasonable investigation should consist of. Any contention that Dehais's investigation was somehow inadequate is unsupported by expert opinion or other evidence on what an appropriate investigation required or why Dehais's investigation was insufficient. Nothing about the investigation rises to the level of malice or reckless indifference.

EEOC also argued SkyWest acted with malice and reckless indifference because it did not give Budd updates on the investigation's status. (ROA.2557). However, Dehais testified that if an employee is on administrative leave she would try to provide an update every month or two as best practice. (ROA.3256:19-3257:1). The investigation commenced on December 17, 2019, and Budd's counsel was in contact with SkyWest's General Counsel by January 8, 2020—less than month after Budd filed her complaint with HR. (ROA.3378:22-3379:22).

As for the claim SkyWest never communicated the results of its investigation to Budd, by the time the investigation was complete Budd had already hired an attorney to deal with SkyWest directly and represent her in trying to obtain suitable relief. (ROA.3378-3386). This is not evidence of malice or reckless indifference but of SkyWest acting ethically and responsibly in

communicating with Budd's counsel, who was retained to represent her in this matter, rather than communicate directly with Budd. EEOC's contention that punitive damages are warranted because neither Dehais nor any of SkyWest's employees provided Budd a return-to-work date, even after Budd sought clarity on the topic on May 21, 2020, also fails to rise to the level or malice or reckless indifference not only because Budd was represented by counsel at this time, who was engaging in negotiations with SkyWest to resolve Budd's claim (ROA.3379:2-3380:18, 3381:5-8), but also because the return-to-work date became moot after Budd took voluntary retirement ten days later on May 31, 2020.

Finally, any assertion that Dehais acted with malice or reckless indifference because she did not take any action to train employees or to alleviate the hostile work environment until February 2023 ignores the impact of the COVID pandemic, which was out of SkyWest's control and had a devasting effect on its operations and staffing. (ROA.3577:1-3579:4) Moreover, this does not show malice or reckless indifference **toward Budd**, who resigned in May 2020 and no longer worked for SkyWest in February 2023. *See State Farm v. Campbell*, 538 U.S. at 422-23 (award of punitive damages cannot be premised on defendant's conduct toward persons other than plaintiff).

In sum, there was no evidence of any malice or reckless indifference to

Budd's rights sufficient to support the award of punitive damages. Because the terms "malice" and "reckless indifference" focus on the actor's state of mind, *Wantou*, 23 F.4th at 439, it is the employer's subjective intent that matters. *Harris v. FedEx*, 92 F.4th at 302. The defendant employer must at least have acted in the face of a perceived risk that its actions would violate federal law to be liable for punitive damages. *Wantou*, 23 F.4th at 440. That evidence is lacking here; the evidence did not establish the requisite state of mind for punitive damages. SkyWest's actions in this case are thus unlike other cases where this Circuit has found companies liable for punitive damages because they ignored the plaintiff's complaints. *See, e.g., Wantou*, 23 F.4th at 440; *Rhines v. Salinas Constr. Techs., Ltd.*, 574 Fed.Appx. 362, 368 (5th Cir.2014); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir.1999). The judgment for punitive damages should therefore be reversed and remanded with directions to enter JMOL for SkyWest.

### D. The evidence established that SkyWest made good-faith efforts to comply with Title VII.

Moreover, even if any of these managerial employees had acted with malice or reckless indifference, SkyWest is still entitled to JMOL on punitive damages because it made good-faith efforts to comply with Title VII. *See Boh Bros.*, 731 F.3d at 467 ("[E]ven if particular agents acted with malice or reckless indifference, an

-53-

employer may avoid vicarious punitive damages liability if it can show that it made good-faith efforts to comply with Title VII."). Although the district court denied EEOC's motion for JMOL on SkyWest's defense of good faith at trial (ROA. 3620:19), it nevertheless denied SkyWest's post-trial JMOL motion on this defense, based on EEOC's contentions that Dehais's investigation was "too ineffective to constitute a good-faith effort at complying with Title VII." (ROA.2777).

It is undisputed that SkyWest had a policy in place prohibiting sexual harassment, SP53. (ROA.3971-3974). The evidence established that when Budd filed an internal complaint, Dehais conducted an in-depth investigation in accordance with SP53. (ROA.3259-3277). Dehais interviewed multiple witnesses, examined relevant evidence, provided a detailed analysis of Budd's allegations, and took corrective action against the responsible employees. (ROA.3161:7-3164:18, 3213:22-3215:17, 3276:23-3277:1,3277:24-3278:17, 3280:14-3281:13). As noted above, EEOC provided no evidence—expert or otherwise—of what a good-faith investigation must consist of. That Dehais did not interview every employee implicated by Budd's allegations or subject employees she interviewed to "fulsome questioning," and did not follow her practice of writing an investigative summary does not show a lack of good faith. Good faith is not negated by EEOC's claim that Dehais "subjected the employees whom she found to have violated SkyWest's sexual harassment policy to

lenient corrective action," since there was no showing (by expert testimony or otherwise) what "suitable corrective action" Dehais should have taken in exercising her discretion to take corrective action.

Based on the evidence of Dehais's good-faith investigation, JMOL should have been granted for SkyWest on the award of punitive damages based on its on good-faith efforts to comply with Title VII. *See Harris*, 92 F.4th at 302-03 (reversing district court's denial of JMOL on good-faith efforts to comply with Title VII and vacating punitive-damages award). For this reason as well, the judgment for punitive damages should be reversed and remanded with directions to enter JMOL for SkyWest.

## CONCLUSION

For the foregoing reasons, Defendant-Appellant SkyWest Airlines, Inc., respectfully requests that the district court's judgment be reversed and remanded for a new trial on all issues or on damages, that the injunction be vacated, and that the judgment for punitive damages be reversed and remanded with directions to enter JMOL for SkyWest.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI LLP

*/s/ John Roger Mann*
John Roger Mann
555 17th Street, Suite 3400
Denver, Colorado 80202
(303) 534-5160
jmann@grsm.com

GORDON REES SCULLY MANSUKHANI LLP
Chad A. Shultz
55 Ivan Allen Jr. Blvd., NW, Suite 750
Atlanta, GA 30308
(404) 869-9054
cshultz@grsm.com

FISHER & PHILLIPS LLP
Liz E. Drumm
500 Crescent Court, Suite 300
Dallas, TX 75201
(214) 220-8313
ldrumm@fisherphillips.com

*Attorneys for Defendant-Appellant*
*SkyWest Airlines, Inc.*

-56-

## CERTIFICATE OF SERVICE

The undersigned does hereby certify pursuant to FED.R.APP.P. 25 that on this 2nd day of September, 2025, a true and correct copy of the foregoing **OPENING BRIEF** was served via the ECF Court filing system to:

James Driscoll-MacEachron
EEOC
131 M Street, N.E., 5th Floor
Washington, DC 20507

Alexa Rae Lang
EEOC
207 S. Houston Street, 3rd Floor
Dallas, Texas 75202

Edith K. Thomas
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910

*s/John Roger Mann*

## CERTIFICATE OF COMPLIANCE PURSUANT TO F.R.A.P. 32(g)(1)

As required by FED.R.APP.P. 32(g)(1) and 5TH CIR. R. 32.3, I certify that this Brief complies with the type-volume limitation of FED.R.APP.P. 32(a)(7)(B) because this Brief contains no more than 13,000 words (12,897), excluding the parts of the brief exempted by FED.R.APP.P. 32(f). I relied on my word processor to obtain the word count and it is Word 365. I further certify that this Brief complies with the typeface requirements of FED.R.APP.P. 32(a)(5) and the type style requirements of FED.R.APP.P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Word 365 in 14-point Times New Roman. I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

*s/John Roger Mann*
John Roger Mann
GORDON REES SCULLY MANSUKHANI LLP
555 17th Street, Suite 3400
Denver, CO 80202
(303) 534-5160
jmann@grsm.com
