SkyWest No. 25-10491

# In the United States Court of Appeals for the Fifth Circuit

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
*Plaintiff-Appellee*,

SARAH BUDD,
*Intervenor-Plaintiff-Appellee,*
*v.*

SKYWEST AIRLINES, INC.,
*Defendant-Appellant.*

**Appeal from the United States District Court for the Northern District of Texas**
**Honorable Sidney A. Fitzwater, United States District Judge**
**Case No. 3:22-CV-1807-D**

## REPLY BRIEF OF APPELLANT SKYWEST AIRLINES, INC.

GORDON REES SCULLY MANSUKHANI LLP
Chad A. Shultz
55 Ivan Allen Jr. Blvd. NW, Ste. 750
Atlanta, Georgia 30308
(404) 869-9054

GORDON REES SCULLY MANSUKHANI LLP
John Roger Mann
555 17th Street, Ste. 3400
Denver, Colorado 80202
(303) 534-5160

FISHER & PHILLIPS LLP
Liz E. Drumm
500 Crescent Court, Ste. 300
Dallas, Texas 75201
(214) 220-8313

*Attorneys for Defendant-Appellant SkyWest Airlines, Inc.*

TABLE OF CONTENTS

Table of Authorities.................................................................................................ii

I.      The district court abused its discretion in admitting Budd's hearsay texts........1

II.     The district court erred in refusing to instruct the jury on mitigation of damages for noneconomic loss.......................................................................6

      A.     Congress did not abrogate the common-law doctrine of avoidable consequences for compensatory damages in Title VII cases..................6

           1.     There is no express intent to abrogate the doctrine......................6

           2.     The duty to mitigate noneconomic harm is well-established.......9

           3.     The *expressio unius* canon does not apply to different statutes enacted at different times addressing different items of damages.............................................................................12

      B.     SkyWest's tendered instruction was supported by evidence and correctly stated the applicable law......................................................17

      C.     EEOC's policy arguments are misplaced.............................................19

      D.     SkyWest is entitled to a new trial on compensatory damages..............23

III.    Punitive damages are inappropriate because SkyWest's conduct was not malicious or recklessly indifferent and because SkyWest made good-faith efforts to comply with Title VII................................................................24

Certificate of Service...........................................................................................31

Certificate of Compliance Pursuant to FED.R.APP.P. 32(g)...................................32

## TABLE OF AUTHORITIES

**CASES**

*Astoria Fed. Sav. & Loan Assn. v. Solimino*,
   501 U.S. 104 (1991)..................................................................................6, 7

*Barnhart v. Peabody Coal Co.*,
   537 U.S. 149 (2003)....................................................................................14

*Battle v. Memorial Hosp.*,
   228 F.3d 544 (5th Cir.2000) .........................................................................2

*Caldarera v. Eastern Airlines, Inc.*,
   705 F.2d 778 (5th Cir.1983) .......................................................................23

*City of Milwaukee v. Illinois*,
   451 U.S. 304 (1981).......................................................................................7

*Coastal Conservation Assn. v. U.S. Dept. of Commerce*,
   846 F.3d 99 (5th Cir.2017) .........................................................................14

*Cooper v. Whatcom County*,
   650 F.Supp.3d 1144 (W.D.Wash.2023) .....................................................10

*Deters v. Equifax Credit Info. Servs., Inc.*,
   202 F.3d 1262 (10th Cir.2000) ...................................................................27

*Does 1-5 v. Obiano*,
   138 F.4th 955 (5th Cir.2025) .....................................................................7, 8

*EEOC v. Chris the Crazy Trader Inc.*,
   No. 21-CV-02666-NYW-TPO, 2025 WL 958486 (D.Colo. Mar.
   31, 2025) ................................................................................................ 12, 13

*EEOC v. Fred Meyer Stores, Inc.*,
   954 F.Supp.2d 1104 (D.Ore.2013) .............................................................13

*EEOC v. SDI of Mineola, Tex., LLC*,
   631 F.Supp.3d 418 (E.D.Tex.2022) ..........................................6, 7, 8, 16, 17

*Ford Motor Co. v. EEOC,*
    458 U.S. 219 (1982) .............................................................................................16

*General Tire of Miami Beach, Inc. v. NLRB,*
    332 F.2d 58 (5th Cir.1964) ...................................................................................3

*GIC Servs., LLC v. Freightplus USA, Inc.,*
    866 F.3d 649 (5th Cir.2017) ...............................................................................20

*Hagerty v. L & L Marine Servs., Inc.,*
    788 F.2d 315 (5th Cir.1986) ...............................................................................22

*Harris v. FedEx Corp. Servs., Inc.,*
    92 F.4th 286 (5th Cir.2024) ......................................................................... 20, 29

*Huffman Asset Mgt., LLC v. Colter,*
    719 S.W.3d 308 (Tex.App.2023) .........................................................................21

*In re Black Elk Energy Offshore Ops., LLC,*
    114 F.4th 343 (5th Cir.2024) ................................................................................6

*In re Bourgeois,*
    902 F.3d 446 (5th Cir.2018) ...............................................................................14

*Keyes v. Lauga,*
    635 F.2d 330 (5th Cir.1981) ...............................................................................23

*La Union Del Pueblo Entero v. Abbott,*
    151 F.4th 273 (5th Cir.2025) ..............................................................................14

*Lincoln v. Case,*
    340 F.3d 283 (5th Cir.2003) ...............................................................................24

*Marx v. General Revenue Corp.,*
    568 U.S. 371 (2013) ............................................................................................14

*Minerva Surgical, Inc. v. Hologic, Inc.,*
    594 U.S. 559 (2021) ..............................................................................................6

*Mobil Oil Corp. v. Higginbotham,*
    436 U.S. 618 (1978) ..............................................................................................7

*Moulton v. Alamo Ambulance Serv., Inc.*,
    414 S.W.2d 444 (Tex.1967) ...................................................... 11, 12, 22, 24

*Parker v. General Extrusions, Inc.*,
    491 F.3d 596 (6th Cir.2007) ...................................................................27

*Schwartz v. NMS Indus., Inc.*,
    575 F.2d 553 (5th Cir.1978) ................................................................ 7, 8, 19

*St. Louis S.W. Ry. Co. v. Ball*,
    66 S.W. 879 (Tex.Civ.App.1902)...............................................................10

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)......................................................................................24

*Texas & Pac. Ry. Co. v. White*,
    101 F. 928 (5th Cir.1900) ...........................................................................11

*U.S. v. Peterson*,
    977 F.3d 381 (5th Cir.2020) ........................................................................19

*United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*,
    995 F.Supp.2d 647 (S.D.Tex.2014)...........................................................21

*Verrett v. McDonough Marine Serv.*,
    705 F.2d 1437 (5th Cir.1983) ......................................................................22

*Ward v. Jackson State Univ.*,
    602 Fed.Appx. 1000 (5th Cir.2015) .............................................................4

## COURT RULES

FED.R.EVID. 801(c) ..........................................................................................2

FED.R.EVID. 802..........................................................................................2, 4

FED.R.EVID. 803(1) .........................................................................................4

## STATUTES

42 U.S.C. § 706(g) ..........................................................................................16

42 U.S.C. § 1981a(b)(2) ........................................................................... 13, 15, 18

42 U.S.C. § 1981a(b)(3) .............................................. 6, 7, 8, 9, 12, 13, 15

42 U.S.C. § 2000e-5 .........................................................................................13

42 U.S.C. § 2000e-5(g)(1) ........................................ 12, 13, 14, 15, 16, 18

**OTHER AUTHORITIES**

4 C. Mueller & L. Kirkpatrick, FEDERAL EVIDENCE § 8:67 (4th ed.2025)............4, 5

C. McCormick, LAW OF DAMAGES § 33 (1935) .......................................................9

C. McCormick, LAW OF DAMAGES § 36 (1935) .....................................................22

RESTATEMENT (SECOND) OF TORTS § 918 (1979) ....................................................10

**I.        Admission of Budd's hearsay texts was an abuse of discretion.**

"The conduct Ms. Budd endured was frequent and severe. This wasn't a lie. Ms. Budd was texting her friends and family about this environment in realtime. You will see the time stamps on those texts. You will get a copy of those texts when you deliberate, and I encourage you to read all of them closely." (ROA.3712:4-9).

Counsel gave away the game in closing argument. That the texts were offered for the truth of the matters asserted therein was confirmed by counsel's closing request to the jury to "read all of them closely" because "This wasn't a lie." Counsel notably did not tell the jury to confine its consideration of the texts to the issue of damages. Counsel did not argue that Budd's emotional distress was "frequent and severe" but that SkyWest's ***conduct*** was "frequent and severe." EEOC admits telling the jury "This wasn't a lie" was "a response to SkyWest's trial theme that Budd had made up the harassment" and thus concedes it asked the jury to consider the texts for the truth of the matter asserted—that the alleged harassment actually occurred. Its *post hoc* rationalization that this "referred to the timing of Budd's texts, not for the truth of the matter asserted in them, but as circumstantial evidence about the timing of Budd's complaints" (Brief at 28) rings false inasmuch as EEOC's closing never addressed Budd's alleged desire to get out of working Christmas. (ROA.3711:14-3712:9).

Telling the jury that what Budd's texts said "wasn't a lie" was directly counter to the district court's instruction not to consider the texts for the truth of the matters described. But SkyWest is not seeking a new trial based on counsel's improperly telling the jury to believe the texts were true during closing, as EEOC wrongly suggests. SkyWest is seeking a new trial because the texts were hearsay improperly admitted over objection contrary to FED.R.EVID. 802.

Exhibit 25 contains this objectionable language:

> It's out near Dallas. apparently where they're going to "sell me" for prostitution.
>
> 11:08 AM

This is the hearsay statement that SkyWest objected to as being offered for its truth: that someone at SkyWest said they were going to "sell" Budd for "prostitution." Budd's out-of-court statement that someone at SkyWest actually said something to this effect is inadmissible hearsay under FED.R.EVID. 801(c) and 802. "A comment by a party made out of court and not under oath is inadmissible hearsay." *Battle v. Memorial Hosp.*, 228 F.3d 544, 555 (5th Cir.2000).

EEOC nevertheless asserts "Plaintiffs did not use the 'prostitution' text for its truth at all" but used it "to show that she made the statements." Brief at 18. In reality, Plaintiffs used it to show that **someone at SkyWest** actually made the statement, and thus for the truth that someone at SkyWest said something

amounting to workplace harassment. It is not what someone at SkyWest allegedly

said (*i.e.*, that they were actually going to "sell" Budd into prostitution) that is being

offered for the truth of the matter asserted; rather, what is being offered for the truth

of the matter asserted is the statement that ***Budd said*** that someone at SkyWest made

this crude comment. What ***Budd said*** someone at SkyWest said is pure hearsay. The

text was offered to prove the truth of Budd's statement that someone at SkyWest

said something amounting to workplace harassment. As such, it was inadmissible

hearsay. As the Court explained in *General Tire of Miami Beach, Inc. v. NLRB*, 332

F.2d 58, 61 (5th Cir.1964), the hearsay lies in the assertion that ***the declarant said***

someone else said something:

> What we have is: witness A testifies he overheard B state that C said such and
> such. Obviously A can prove what B said. But the decisive thing is what C is
> supposed to have said. And A cannot prove what C said by stating what B said
> C said.

Similarly here, EEOC cannot prove what someone at SkyWest is supposed to have

said by stating what Budd said someone at SkyWest said.

Even if what someone at SkyWest allegedly said is itself not being offered

for the truth of that particular statement, the fact Budd said someone at SkyWest

made that statement was nevertheless offered precisely for the truth that someone

at SkyWest actually made that statement. It was not offered to show that Budd

complained about perceived harassment or that SkyWest had notice, but to show

it actually happened. For this reason, the text was hearsay that should have been excluded under Rule 802. *See Ward v. Jackson State Univ.*, 602 Fed.Appx. 1000, 1003 (5th Cir.2015).

That the text may have been admissible under other hearsay exceptions does not change the fact that it was used for the truth of the matter asserted—that someone at SkyWest actually said something amounting to workplace harassment—and not for any purpose for which the hearsay exception exists. The "prostitution" text does not involve any "present sense impression" under FED.R.EVID. 803(1); it does not reflect present impressions from Budd's sight, sound, smell, taste, or touch "made while or immediately after the declarant perceived it." Rather, it involves a past act, which is outside of Rule 803(1). *See* 4 C. Mueller & L. Kirkpatrick, FEDERAL EVIDENCE § 8:67 (4th ed.2025) ("The exception clearly does not reach statements that refer to *past* acts, events or conditions, when such statements are offered to prove them, and the mere fact that the statement refers to or expresses some present perception is not enough."). The substance of Budd's text about what someone at SkyWest allegedly said about "selling her into prostitution" is not a "present sense impression"; the statement is really a claim about historical fact, that the incident actually happened. "Allowing the exception to be used in this setting would undermine the

hearsay doctrine and distort the exception badly." *Id*. This is simply another pretext for admission of hearsay. These texts are not relevant to show Budd's "present sense impression"; their only purpose was to corroborate Budd's version of past events that no one else but her testified about at trial.

Regardless of whether the texts were relevant to Budd's damages or her viewing the alleged conduct as hostile, they were still inadmissible hearsay because both of these proffered reasons necessarily presume the alleged conduct actually occurred. The district court's instruction that "it doesn't matter ... whether what is being said is true but instead what the witness is complaining about to her husband" (ROA.2894) similarly presumes the alleged conduct actually occurred for Budd to have been complaining about it.

EEOC nevertheless argues the texts were cumulative to other evidence, but the only other evidence of this alleged "prostitution" incident came solely from Budd's own testimony, which was uncorroborated by any other testimony or evidence. Because the hearsay texts were improperly offered to corroborate Budd's testimony on events that no one else substantiated, and thus for their truth, their admission prejudiced SkyWest, entitling it to a new trial on all issues.

**II.     The district court erred in refusing to instruct the jury on mitigation of noneconomic loss.**

    **A.     Congress did not abrogate the doctrine of avoidable consequences for Title VII compensatory damages.**

        *1.     There is no express intent to abrogate the doctrine.*

Whether the common-law doctrine of avoidable consequences applies to compensatory damages under 42 U.S.C. § 1981a(b)(3) is a question of first impression in this Circuit. That no case from this Circuit is on point means only that it has never previously been raised. The Court is asked to choose between two competing views: that of *EEOC v. SDI of Mineola, Tex., LLC*, 631 F.Supp.3d 418, 421 (E.D.Tex.2022), which held the doctrine applies to compensatory damages in Title VII cases, and that of other cases holding it does not, based largely on rote application of a canon of interpretation without significant analysis of Congressional intent.

"Congress legislates against a background of common-law adjudicatory principles, and it expects those principles to apply except when a statutory purpose to the contrary is evident." *Minerva Surgical, Inc. v. Hologic, Inc.*, 594 U.S. 559, 572 (2021) (cleaned up) (quoting *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 108 (1991)); *In re Black Elk Energy Offshore Ops., LLC*, 114 F.4th 343, 353 (5th Cir.2024). To abrogate a common-law principle, the

statute must "speak directly" to the question addressed by the common law. *See City of Milwaukee v. Illinois,* 451 U.S. 304, 315 (1981); *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625 (1978). Unless a contrary purpose is clearly expressed in or apparent from the statute, courts may take it as given that Congress has legislated with an expectation that well-established common-law principles will apply. *Astoria*, 501 U.S. at 108. *See Does 1-5 v. Obiano*, 138 F.4th 955, 960 (5th Cir.2025).

Compensatory damages authorized by § 1981a(b)(3) include tort damages traditionally available at common-law: future pecuniary losses and other non-pecuniary losses. At common law, the doctrine of avoidable consequences limits such damages by imposing a duty on the injured party to take reasonable steps to mitigate them. *Schwartz v. NMS Indus., Inc.*, 575 F.2d 553, 556 (5th Cir.1978). Because the duty to mitigate is well-established under common law, the interpretive presumption that Congress expected the duty will apply to these compensatory damages applies to Title VII. *SDI*, 631 F.Supp.3d at 420. When these common-law compensatory damages were incorporated into § 1981a(b)(3), so, too, was the common-law duty to mitigate them, especially because compensatory damages include "future pecuniary losses," to which the duty to mitigate has always applied. The language of § 1981a(b)(3) does not give "clear

-7-

indication" that Congress meant to abrogate the common-law duty to mitigate. *Obiano*, 138 F.4th at 960. There was no express disclaimer of this duty by Congress and no clear expression of Congressional intent to abrogate the common-law doctrine of avoidable consequences with respect to compensatory damages under Title VII. "Congress has not expressly or impliedly evinced a contrary expectation on this issue." *SDI*, 631 F.Supp.3d at 420.

EEOC cannot point to anything in § 1981a(b)(3) or its legislative history that evinces the clear intent of Congress to abrogate the common-law doctrine of avoidable consequences and its concomitant duty to mitigate compensatory damages. EEOC seeks to infer intent from inaction. EEOC's argument that Congress purposefully did not include such a mitigation requirement for compensatory damages means only that it intended the existing common law duty to apply, so that express inclusion of the duty was unnecessary.

The district court's conclusion that "even if Title VII imposes some duty to mitigate compensatory damages, it does not impose a duty to mitigate emotional harm" (ROA.2781) is thus beside the point. The source of this duty is not Title VII but the common law, the source of compensatory damages allowed under Title VII. Traditionally, the common-law duty to mitigate persists as long as damages are suffered and may reasonably be mitigated. *Schwartz*, 575 F.2d at 556. This duty always

exists and applies to every action unless specifically disclaimed by legislation, which Title VII does not clearly or unequivocally do.

### 2. *The duty to mitigate noneconomic harm is well-established.*

EEOC next argues that SkyWest does "not identify a well-established common law rule requiring mitigation of emotional distress damages when Congress enacted the 1991 Amendments to Title VII." Brief at 40. This is asking the wrong question by drawing a distinction between damages that the tendered instruction did not. The question is not whether the common-law doctrine of avoidable consequences applies to noneconomic loss, but whether it applies to compensatory damages. The instruction tendered by SkyWest was not limited to noneconomic loss, but applied to "damages" generally. (ROA.1387). Because there is no clearly expressed intent that the duty to mitigate not apply to compensatory damages under § 1981a(b)(3), the instruction should have been given as tendered.

EEOC, like the district court, tries to parse the doctrine when it comes to emotional harm, arguing that the duty to mitigate emotional harm was not well-established in 1991 when § 1981a(b)(3) was enacted. But the doctrine historically applies to *all* damages recoverable in tort, and any purported distinction between economic and noneconomic loss or between physical and emotional harm is artificial. This is why treatises such as C. McCormick, LAW OF DAMAGES § 33

(1935) generally do not make this explicit distinction but describe the doctrine "broadly." Nothing in RESTATEMENT (SECOND) OF TORTS § 918 (1979) precludes application of the doctrine to noneconomic loss or emotional distress. Rather, it states that "one injured by the tort of another is not entitled to recover damages for *any harm* that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." (emphasis added). "Any harm" necessarily includes emotional distress and noneconomic loss. *See Cooper v. Whatcom County*, 650 F.Supp.3d 1144, 1159 (W.D.Wash.2023) (citing § 918 to deny summary judgment for plaintiffs on affirmative defense of failure to mitigate predicated on lack of efforts to minimize emotional distress damages).

Instead of law review articles, SkyWest relies on the common law as it existed in 1991, as articulated in cases from this Circuit and from states in this Circuit. The district court's foundational premise that "the supposed common-law duty to mitigate emotional harms plainly is not" well-established (ROA.2782) is simply not true in Texas, whose courts have recognized for more than a century that injured plaintiffs have a legal duty to mitigate or minimize emotional harm as well as physical harm. *See St. Louis S.W. Ry. Co. v. Ball*, 66 S.W. 879, 882 (Tex.Civ. App.1902) ("The court erred in refusing appellant's eighth requested charge, which was: 'For all the suffering, if any, *either mentally or physically*, which plaintiff

could have prevented by the exercise of prudence and reasonable care, treatment ....

he cannot recover anything....'"") (emphasis added). Nor is it true in this Circuit. *See Texas & Pac. Ry. Co. v. White*, 101 F. 928 (5th Cir.1900) (trial court should have instructed jury, as requested by defendant, that plaintiff could not recover for pain or suffering, either physical or mental, which he may have sustained by reason of his failure to use ordinary care in having himself treated). SkyWest's point is not that Texas law applies to Title VII claims, but that, contrary to the district court's misapprehension, the common-law duty to mitigate emotional harm was indeed "well-established" by 1991.

EEOC's attempt to distinguish cases like *Moulton v. Alamo Ambulance Serv., Inc.*, 414 S.W.2d 444 (Tex.1967), because they focused on mitigation of noneconomic loss "by addressing the plaintiff's underlying physical injury" is simply hair-splitting. The cause of noneconomic loss is immaterial. The duty to mitigate noneconomic loss requires a plaintiff to take reasonable steps to prevent pain and suffering from emotional injuries just as much as it does to take reasonable steps to prevent pain and suffering from physical injuries. "[T]he better practice generally would be to instruct the jury that in arriving at its answer to the issue it should not include any sum for physical and ***mental pain and suffering***, loss of earnings, etc., if any, proximately caused by failure of an injured person to care

for and treat his injuries, if any, as a reasonable prudent person would in the exercise of ordinary care under the same or similar circumstances." *Id*. at 450 (emphasis added).

EEOC fails to show any clear Congressional intent to abrogate the well-established common-law doctrine of avoidable consequences for compensatory damages (including noneconomic loss) in Title VII cases. It cites nothing to substantiate the position that Congress clearly intended to abrogate the common-law duty to mitigate in enacting § 1981a(b)(3). Instead it relies, as have a number of courts, on misapplication of the canon of statutory interpretation, *expressio unius est exclusio alterius*.

> **3.      The *expressio unius* canon does not apply to different statutes enacted at different times addressing different items of damages.**

EEOC argues that because the statute authorizing recovery of backpay, 42 U.S.C. § 2000e-5(g)(1), imposes an express offset for "amounts earnable with reasonable diligence," whereas § 1981a(b)(3) imposes no similar offset for compensatory damages, the legislative scheme indicates an intent to apply the doctrine of avoidable consequences only to backpay and not to compensatory damages. A number of courts rely on this rationale. *E.g.*, *EEOC v. Chris the Crazy Trader Inc.*, No. 21-CV-02666-NYW-TPO, 2025 WL 958486, *8 (D.Colo. Mar.

31, 2025). These courts reason that because "Congress specifically carved out 'backpay' and 'any other relief authorized under' § 2000e-5 from compensatory damages awards" in § 1981a(b)(2), "Congress authorized a mitigation defense to backpay awards, but not compensatory damages awards." *Id*. *See EEOC v. Fred Meyer Stores, Inc*., 954 F.Supp.2d 1104, 1128 (D.Ore.2013) ("If Congress intended there to be a duty to mitigate all compensatory damages, it is illogical that it chose to single out the duty to mitigate back pay alone.").

The stated rationale is that because backpay is recoverable only through § 2000e-5(g)(1) and is specifically exempted from the definition of compensatory damages under § 1981a(b)(2), the limitations on backpay in § 2000e-5(g)(1), including the offset for "interim earnings or amounts earnable with reasonable diligence," do not apply to compensatory damages under § 1981a(b)(3). The rationale that because § 2000e-5(g)(1) includes an express doctrine of avoidable consequences whereas § 1981a(b)(3) does not, Congress must not have intended to apply the doctrine to compensatory damages under Title VII, is based on a misapplication of the *expressio unius est exclusio alterius* canon. *E.g.*, *Chris the Crazy Trader*, 2025 WL 958486 at *8 ("if Congress intended to apply § 2000e-5's mitigation defense to all compensatory damages awards, it would have done so expressly.").

-13-

The *expressio unius* canon does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an "associated group or series," justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). "[T]he expressio unius canon is not meant to be mechanically applied." *In re Bourgeois*, 902 F.3d 446, 447 (5th Cir.2018). The "canon does not apply 'unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.'" *Marx v. General Revenue Corp.*, 568 U.S. 371, 381 (2013) (quoting *Barnhart*, 537 U.S. at 168). *See Coastal Conservation Assn. v. U.S. Dept. of Commerce*, 846 F.3d 99, 106 (5th Cir.2017). The canon thus does not apply to every statutory list. "The context must justify ... the inference that items not mentioned were excluded by deliberate choice." *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 294 (5th Cir.2025).

Compensatory damages and backpay under Title VII are addressed by two different statutes. Backpay under § 2000e-5(g)(1) is awarded where an employee has been terminated or constructively discharged, or was moved to a lower-paid position, denied a promotion, or not hired because of discrimination. Wishing to expand the range of remedies available under Title VII, Congress passed the Civil Rights Act of 1991, which added the remedy of compensatory damages.

-14-

EEOC acknowledges that "Congress enacted the 1991 Amendments at a different time than Title VII's failure-to-mitigate backpay defense." Brief at 33. Under § 1981a(b)(3), compensatory damages for future pecuniary losses and nonpecuniary losses may be awarded to plaintiffs who have suffered intentional discrimination in the workplace. Section 1981a(b)(2), however, expressly excludes backpay from compensatory damages, so that the two statutes are not *in pari materia*. Consequently, backpay and compensatory damages are not an "associated group or series" precisely because they are in different statutes enacted at different times and because § 1981a(b)(2) expressly excludes backpay from compensatory damages under Title VII. It is not inconsistent for one statute to expressly limit recovery while another statute implicitly allows recovery to be limited by the common law, especially when they were enacted at different times.

Whereas compensatory damages under Title VII have their root in the common law, backpay under § 2000e-5(g)(1) is a creature of statute. Backpay is not a remedy traditionally available at common law, especially for a cause of action—intentional gender-based employment discrimination—that did not exist at common law, where employment is "at will. Because backpay is a statutory creation, it was necessary for Congress to expressly legislate a duty to mitigate backpay, thus incorporating an equivalent of the doctrine of avoidable

-15-

consequences into the statute. Although the duty to mitigate damages is "rooted in an ancient principle of law," *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982), damages for backpay are not. Backpay is singled out, therefore, because it is a statutorily created item of damages to which it may not be clear whether the common-law duty to mitigate applies. As explained in *SDI*, 631 F.Supp.3d at 421, "The 1964 law may well have needed to mention the mitigation defense to avoid implying its exclusion as § 706(g)'s definition of back-pay relief excludes two things."

> It excludes what a person could have earned in the interim period between the wrong and the remedy (the mitigation concept from common law). And it excludes what a person did in fact earn in that interim period (a causation-of-loss concept from common law). Had the law mentioned only the second concept in listing the exclusions, the *expressio unius* canon might have supported the inference that the mitigation limit did not apply.

*Id*. Hence, the express offset in § 2000e-5(g)(1) for "interim earnings or amounts earnable with reasonable diligence" had to be expressed more explicitly because it encompasses more than common-law mitigation of a statutorily created category of damages. But such a provision was unnecessary with regard to the common-law duty to mitigate compensatory damages, since that duty already existed and was implicit in the nature of such damages.

EEOC's argument that Congress "***did*** impose limits on Title VII compensatory damages in other respects" refers to express statutory limitations that were

not part of common law, *e.g.*, barring compensatory damages for disparate impact claims, capping compensatory and punitive damages, and precluding compensatory damages altogether in certain cases under the ADA. None of these limitations on compensatory damages existed at common law and none is analogous to the common-law doctrine of avoidable consequences.

*SDI* expressly held that Title VII claimants have a duty to mitigate compensatory damages for nonpecuniary losses sustained as result of sexual harassment and hostile work environment; the court found the duty to mitigate was well established under common law, and that Congress had not expressly or impliedly evinced contrary expectation on that issue. *SDI* is directly on point, and EEOC has failed to show why it was wrongly decided. *Fred Meyer* and the other, unpublished cases cited by EEOC were conclusively distinguished in *SDI*, 631 F.Supp.3d at 422 & n.18, and EEOC fails to show why its analysis was incorrect. Notably, EEOC cites no employment law treatise that disagrees with *SDI* that Title VII claimants have a duty to mitigate compensatory damages or that cites with approval any of the cases EEOC offers for its position.

### B.   SkyWest's tendered instruction was supported by evidence and correctly stated the law.

EEOC does not dispute there was evidence at trial, including both expert and Budd's own testimony, that Budd did not take reasonable steps to mitigate

her claimed noneconomic damages, including her refusal to medicate and seek therapeutic help for her claimed emotional distress. Although EEOC argues SkyWest did not use the evidence of Budd's failure to treat to show failure to mitigate her damages, it nevertheless still established that Budd failed to mitigate them. SkyWest could not use this evidence for this purpose because the district court would not instruct on the defense of failure to mitigate.

EEOC's argument that Pattern Instruction 15.5, which addresses mitigation of damages in general, does not apply to Title VII claims simply begs the question that it does not. That the notes to 15.5 state "For claims under Title VII and the ADA, please refer to the mitigation instruction contained in Instruction No. 11.14" does not mean 11.4 and 15.5 are mutually exclusive, but rather that in such cases 15.5 should also be given along with 11.4 because 11.4 applies to backpay, which is excluded from compensatory damages under § 1981a(b)(2), while 15.5 applies to compensatory damages. There is no need for a pattern instruction on mitigation of compensatory damages that expressly applies to Title VII cases because the standard mitigation instruction applies, not because the duty to mitigate compensatory damages under Title VII does not exist. In contrast, the specific offset to backpay under § 2000e-5(g)(1) exists only by virtue of statute. Moreover, Pattern Instructions do not "presume to be a legal treatise"

and "do not themselves have the force of law except to the extent that they recite what is controlling law." *U.S. v. Peterson*, 977 F.3d 381, 391 n.2 (5th Cir.2020). "[E]ven if an instruction is drawn from our court's studied and recommended pattern instructions, it, independently, must be confirmed to be 'a correct statement of the law.'" *Id*. A defendant can still be entitled to an additional instruction if the instruction is correct, is not substantially covered by the pattern instruction, and omission of the instruction would be prejudicial. *See id*. A legally appropriate instruction should therefore be given regardless of what the pattern instruction says.

Since there is no clear Congressional intent to abrogate the common-law doctrine of avoidable consequences in Title VII cases, mitigation of compensatory damages is addressed by the more broadly applicable 15.5 ("the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort"). This is a correct statement of law. *See Schwartz*, 575 F.2d at 556.

## C.    EEOC's policy arguments are misplaced.

EEOC's argument that recognizing the defense of failure to mitigate compensatory damages in Title VII cases "would undermine this Court's longstanding approach to evidence of emotional distress" is difficult to follow. Although

this Circuit has recognized that a plaintiff's testimony alone may be sufficient proof of mental anguish damages, *e.g.*, *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 300 (5th Cir.2024), the issue is not the sufficiency or nature of proof of such damages but the duty to mitigate them. A requirement that a plaintiff mitigate her mental anguish is not inconsistent with that holding. The argument that recognizing a duty to mitigate would mean that the plaintiff's own testimony regarding her mental state is no longer enough to support a damage award is simply a *non sequitur*. Just because a plaintiff's testimony alone may be sufficient proof of mental anguish damages when challenged by the defendant does not necessarily mean that a jury cannot consider other evidence relevant to the damages claimed.

EEOC further argues that if the duty to mitigate is recognized, "plaintiffs will need to introduce testimony that they sought sufficient care for their emotional distress, including expert testimony on the efficacy of medication and treatment offered and undertaken." This argument confuses the parties' respective burdens of proof. Failure to mitigate is an affirmative defense, which the defendant bears the burden to establish. *GIC Servs., LLC v. Freightplus USA, Inc.*, 866 F.3d 649, 661 (5th Cir.2017) ("The burden rests with the wrongdoer to show that the victim of tortious conduct failed to mitigate damages"). *See* Pattern

Instruction 15.5 ("If you find that the defendant proved by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages...."). The plaintiff is not required to present any evidence of mitigation of damages in her case-in-chief; this is the defendant's burden. But even if a Title VII plaintiff must also present evidence of mitigation efforts pre-emptively, this is fully consistent with the doctrine of avoidable consequences and not contrary to it. Plaintiffs claiming physical injuries and economic loss already have to present evidence of efforts to mitigate their damages, so this is not a burden unique to Title VII plaintiffs.

EEOC's arguments ignore the fact that a jury capable of determining non-economic damages is equally capable of determining whether the plaintiff has increased any noneconomic damages by failing to mitigate them. This is no more of a "difficult task" than "assigning a monetary value to intangible harm." *See Huffman Asset Mgt., LLC v. Colter*, 719 S.W.3d 308, 323 (Tex.App.2023) ("The process of awarding damages for amorphous, discretionary injuries such as pain and suffering, physical impairment, and mental anguish is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss."). Whether a plaintiff acted prudently in minimizing noneconomic damages is well within the sophistication of ordinary lay jurors. *See United Neurology, P.A. v.*

-21-

*Hartford Lloyd's Ins. Co.*, 995 F.Supp.2d 647, 651 (S.D.Tex.2014).

EEOC's assertion that "proposed instruction would impose a novel mitigation defense that could penalize an individual for choosing not to take psychotropic drugs, for example, if they suffer emotional distress" (Brief at 31) is just alarmist rhetoric. In reality, a plaintiff is not required to take unreasonable steps to mitigate damages, only steps that a reasonably prudent person would take. *Verrett v. McDonough Marine Serv.*, 705 F.2d 1437, 1444 (5th Cir.1983). *See Hagerty v. L & L Marine Servs., Inc.*, 788 F.2d 315, 319 (5th Cir.1986) (under avoidable consequences rule, plaintiffs are required to submit to medically advisable treatment for injuries); McCormick, DAMAGES § 36 (same). Because a plaintiff is required only to take steps to mitigate damages that a reasonably prudent person would take, the doctrine of avoidable consequences does not "penalize" plaintiffs but rather prevents them from recovering for losses they reasonably could have avoided. This is a rule of fairness to the defendant, not unfairness to the plaintiff. Allowing recovery of noneconomic damages without the check of the duty to mitigate will only reward plaintiffs who fail to do what ordinary prudent persons would have done to minimize their damages, which is precisely the moral hazard the doctrine of avoidable consequences is intended to avert. *See Moulton*, 414 S.W.2d at 450.

-22-

Finally, EEOC argues SkyWest has an adequate remedy in the form of judicial review of the verdict for excessive damages, which is not the same as an offset for failure to mitigate. *See Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 783 (5th Cir.1983) (only where it is "so large as to shock the judicial conscience, so gross or inordinately large as to be contrary to right reason, so exaggerated as to indicate bias, passion, prejudice, corruption, or other improper motive" will a jury verdict be reversed for excessiveness). But SkyWest has a constitutional right to a jury trial on issues of fact, including whether the plaintiff has acted reasonably and prudently to mitigate claimed damages. Post-verdict judicial review under the "loosely defined 'maximum recovery rule,'" which evaluates to what extent a damages award "is beyond the maximum possible award supported by the evidence," *Keyes v. Lauga*, 635 F.2d 330, 336 (5th Cir.1981), is no substitute for a jury determination of the issue.

### D.  SkyWest is entitled to a new trial on compensatory damages.

The district court's refusal to instruct the jury on mitigation of compensatory damages was not harmless. The jury was allowed to award damages unchecked by the doctrine of avoidable consequences notwithstanding evidence that Budd failed to take steps an ordinary prudent person would have taken to minimize her claimed damages, particularly those as severe as EEOC describes,

such as following medical advice, taking medication prescribed by her psychiatrist, and continuing treatment. Because SkyWest was entitled to an instruction on the duty to mitigate compensatory damages, it is entitled to a new trial on compensatory damages. *See Moulton*, 414 S.W.2d at 450 (because defendant was entitled to jury instruction on failure to mitigate where evidence showed plaintiff's disregard of physician's advice aggravated injury, failure to give instruction entitled defendant to new trial).

## III. Punitive damages are inappropriate because SkyWest's conduct was not malicious or recklessly indifferent and because SkyWest made good-faith efforts to comply with Title VII.

Appellate review of an award of punitive damages must first consider the degree of reprehensibility of the defendant's misconduct. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Exacting appellate review ensures that an award of punitive damages is based upon an "application of law, rather than a decisionmaker's caprice." *Id*. *See Lincoln v. Case*, 340 F.3d 283, 292 (5th Cir.2003).

Despite EEOC's assertion it presented sufficient evidence that Dallin Hansen, Dustin Widmer, and Kellie Dehais acted with malice or reckless indifference to support punitive damages, their conduct did not rise to the requisite level of malice or reckless indifference, and their individual actions were not contrary to

-24-

SkyWest's good faith efforts to comply with Title VII.

EEOC first argues that Hansen's participation in the harassment and witnessing others engaging in harassment serves as sufficient evidence of malice and reckless indifference. Yet EEOC fails to cite any evidence Hansen himself actually received sexual harassment training. Brief at 54. EEOC chose not to subpoena Hansen for trial or read his deposition into evidence; the only evidence of his conduct was Budd's own testimony. Although EEOC cites Dehais's general testimony on how often computer-based sexual harassment training is provided to SkyWest's employees, it cites nothing specific to Hansen. (ROA.3248). EEOC thus failed to show Hansen had sufficient knowledge of SkyWest's policies to act with malice and reckless indifference.

EEOC's contention that Widmer acted with malice and deliberate indifference is based entirely on passive inaction—*i.e.*, that he did not report or attempt to address her September 4, 2019 complaint and did not return or acknowledge her follow-up voicemail. But even if Widmer's failure to report the September 4 conversation with Budd or return her voicemail were contrary to SkyWest's good faith compliance efforts, this does not show malice or indifference, only negligence at most.

Moreover, Dehais specifically directed Widmer to report ***all*** instances of

sexual harassment, unprofessional conduct, and discrimination to Employee Relations per SP 53 during her investigation into Budd's claims. Dehais testified Widmer had not heard about Budd's claims, was "very surprised" and upset, and "did not know what to do" when he forwarded Budd's complaints to Dehais. (ROA.3260-3261, 3989-3990). Widmer's failure to report the September 4 conversation with Budd was therefore not malicious or recklessly indifferent.

EEOC argues Dehais acted with malice and reckless indifference because she "did not interview relevant witnesses, ask follow-up questions about the harassment, or ask a witness for evidence she identified as showing some of the harassment." Brief at 56. Although Dehais testified she could not "recall" asking an employee what sex talk they were referring to in an interview, she asked other employees what type of language or "talk" they had heard at SkyWest DFW. (ROA.3267-3268, 3272). She also went through the list of quotes from Budd's December 14 email to Widmer with Budd, who could not identify who said them except for two Hansen allegedly made. (ROA.2983-2984, 3989). Dehais had no need to ask for the photos one witness mentioned about the candy dish incident because she was already aware of it from her investigation. (ROA.3986-3989).

EEOC maintains Dehais's failure to ask every follow-up question of a witness it believes should have been asked is evidence of malice and reckless

indifference, thus holding Dehais to an exacting but undefined standard it contends she should have met. This amounts at most to negligence, particularly where EEOC presented zero evidence of how her investigation should have been conducted and points to no such evidence in its Brief. Without such evidence to serve as a yardstick for a proper investigation, EEOC can claim that ***any*** investigation is inadequate simply by claiming more could always have been done, without presenting any evidence, as here, of what a proper investigation entailed. No matter what SkyWest did, EEOC can always assert by *ipse dixit* it should have done more. But without such standards or guidance, the jury had no objective basis from which to determine whether Dehais's investigation—or the discipline imposed on individual employees—was adequate. EEOC never showed what an "adequate" investigation would have uncovered or why it would have mattered.

EEOC nevertheless argues evidence of proper investigative standards was unnecessary, citing *Parker v. General Extrusions, Inc.*, 491 F.3d 596, 604 (6th Cir.2007) and *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir.2000). But both cases concerned a complete or nearly complete failure to conduct an investigation, where such standards would not be probative. That is not what the record shows here.

While Dehais's typical practice was to write an investigation summary, she instead provided her findings orally at a February 2020 meeting, after Budd's counsel had already contacted SkyWest. (ROA.3277-3278). Dehais interviewed ten witnesses and issued corrective action, all while Budd was on paid administrative leave and negotiating a settlement with SkyWest's legal department. (ROA.3585). The discipline Dehais imposed was not "minimal" under SkyWest's progressive discipline policy. (ROA.3244-3245, 3273-3277, 3559 3598-3599). EEOC cites no evidence for what constitutes "appropriate" discipline, and appears to argue Dehais acted with reckless indifference because she was not harsh or vindictive enough.

EEOC further contends reckless indifference was shown because "Dehais then did not tell Budd when she finished the investigation, or provide the training she recommended until three years later." Brief at 57. During the investigation, however, Budd was placed on paid administrative leave at her own request. (ROA.4002-4005). Dehais testified that if an employee is on administrative leave she would try to provide an update every month or two as best practice. (ROA. 3256-3257). The investigation commenced on December 17, 2019, and Budd's counsel was in contact with SkyWest's General Counsel by January 8, 2020—less than a month after Budd filed her complaint with ER. (ROA.3262, 3585-

3586). EEOC cites Nikki Mitchell's testimony that Dehais had been directed not to contact Budd, but Mitchell also testified that once an attorney for the employee gets involved, the matter is transferred to SkyWest's legal department for handling. (ROA.3585-3586). Dehais did tell Budd there would be training for the entire department (which was the ultimate conclusion of the investigation) and she could return once training was completed. (ROA.3985). Then COVID happened, which accounts for any delay in implementing the training Dehais recommended. (ROA.3275-3278).

The record thus shows SkyWest promptly conducted a thorough and good-faith investigation into Budd's complaint, such that the award of punitive damages was unwarranted.[1] Dehais conducted an in-depth investigation, interviewed multiple witnesses, examined relevant evidence, generated a report, and took disciplinary and corrective action, including recommending and implementing sexual harassment training. Under these circumstances, the award of punitive damages was inappropriate because SkyWest established the alleged sexual harassment was contrary to its good-faith efforts to prevent discrimination. *See Harris v. FedEx Corporate Servs., Inc.*, 92 F.4th 286, 302 (5th Cir.2024).

---

[1]EEOC's assertion SkyWest did not argue this ground for JMOL was rejected by the court below, which found SkyWest's "argument was stated with sufficient specificity to preserve SkyWest's good-faith defense to punitive damages." (ROA.2770).

-29-

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI LLP

*/s/ John Roger Mann*
John Roger Mann
555 17th Street, Suite 3400
Denver, Colorado 80202
(303) 534-5160
jmann@grsm.com

GORDON REES SCULLY MANSUKHANI LLP
Chad A. Shultz
55 Ivan Allen Jr. Blvd., NW, Suite 750
Atlanta, GA 30308
(404) 869-9054
cshultz@grsm.com

FISHER & PHILLIPS LLP
Liz E. Drumm
500 Crescent Court, Suite 300
Dallas, TX 75201
(214) 220-8313
ldrumm@fisherphillips.com

*Attorneys for Defendant-Appellant*
*SkyWest Airlines, Inc.*

-30-

## CERTIFICATE OF SERVICE

The undersigned does hereby certify pursuant to FED.R.APP.P. 25 that on this 23rd day of January, 2026, a true and correct copy of the foregoing **REPLY BRIEF OF APPELLANT SKYWEST AIRLINES, INC.** was served via the ECF Court filing system to:

James Driscoll-MacEachron
EEOC
131 M St., N.E., 5th Floor
Washington, DC 20507

Alexa Rae Lang
EEOC
207 S. Houston St., 3rd Floor
Dallas, TX 75202

Edith K. Thomas
Zipin, Amster & Greenberg, LLC
8757 Georgia Ave., Ste. 400
Silver Spring, MD 20910

*s/John Roger Mann*

## CERTIFICATE OF COMPLIANCE PURSUANT TO FED.R.APP.P. 32(g)(1)

1. This document complies with the type-volume limit of FED.R.APP.P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED.R.APP.P. 32(f), and 5TH CIR. R. 32.1, this document contains no more than 6,500 words (6,470 in text + 13 in screenshot).

2. This document complies with the typeface requirements of FED.R.APP.P. 32(a)(5), and 5TH CIR. R. 32.1 and the type-style requirements of FED.R.APP.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 365 in 14-point Times New Roman.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

*s/John Roger Mann*
John Roger Mann
GORDON REES SCULLY MANSUKHANI LLP
555 17th Street, Suite 3400
Denver, CO 80202
(303) 534-5160
jmann@grsm.com